The State of Ohio, Appellant, *v.* Siler, Appellee.

[Cite as *State v. Siler,* 116 Ohio St.3d 39, 2007-Ohio-5637.]

(No. 2006-0185—Submitted June 5, 2007—Decided October 25, 2007.)

O'Donnell, J.

{¶ 1} The state of Ohio appeals from a decision of the Ashland County Court of Appeals that reversed Brian Siler's convictions for aggravated murder and five other offenses and held that the admission of hearsay statements of his three-year-old son at his trial denied him his Sixth Amendment right to confront witnesses against him because his child did not testify at trial and because he had no prior opportunity to cross-examine him.

{¶ 2} The focus of this appeal concerns whether a child's statements made in the course of a police interrogation to a sheriff's deputy should be considered testimonial or nontestimonial, as explained in *Crawford v. Washington* (2004), 541

U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, *Davis v. Washington* (2006), 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224, and *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834. After careful review, we have concluded that the statements made to the deputy sheriff were testimonial because the circumstances objectively indicate that no ongoing emergency existed and that the primary purpose of the police interrogation was to establish past events potentially relevant to a later criminal prosecution. Accordingly, we affirm the decision of the court of appeals.

## Facts and Procedural History

{¶ 3} Brian and Barbara Siler married in 1988 and had one child, Nathan, born in July 1998. In June 2001, Brian discovered that Barbara had been having an affair with one of her co-workers. In the ensuing weeks, Barbara placed several 911 calls to sheriff's deputies due to arguments with Brian. No criminal charges arose from these calls, but Barbara frequently expressed her fear of Brian to friends and family.

{¶ 4} On July 30, 2001, after an incident in which Brian allegedly choked her, Barbara obtained a civil protection order that required Brian to surrender his house keys and garage door openers and to stay at least 300 feet away from her; it also established a schedule for him to visit Nathan, who continued to live with Barbara. As a result, Brian moved in with his brother and sister-in-law, who lived about five or six miles away. Barbara subsequently filed for divorce, and Brian told several people that he wanted to hurt her as much as she had hurt him.

{¶ 5} On September 20, 2001, Duane Keener, Barbara's father, received a phone call from Barbara's employer, the accounting firm of Whitcomb & Hess, expressing concern that she had not reported to work that day. After unsuccessfully trying to reach her by phone, Keener drove to her house. Upon arrival, he looked through the garage window, noticed that the door to her van was open, and discovered that he could open the side door to the garage by pushing on it. He entered and continued into the house but did not see anyone. Growing worried, he went back outside and called 911.

{¶ 6} Deputy Ron Singleton and Captain Richert of the Ashland County Sheriff's Office responded to the 911 call and met him around 2:00 p.m. They went into the garage and found Barbara Siler's body hanging from a yellow cord tied to the track of the overhead garage door. The Ashland County Coroner, Dr. William Emery, later estimated that her death occurred eight to ten hours earlier, sometime between 4:00 and 6:00 a.m. that morning.

{¶ 7} Singleton continued into the house by himself and discovered three-year-old Nathan asleep in one of the bedrooms. Upon waking him, he carried Nathan

outside through the garage to his grandfather, shielding the child from any view of his mother.

{¶ 8} Detective Larry Martin, a trained child interviewer, arrived shortly thereafter wearing plain clothes with a vest that concealed his badge and gun. While Nathan sat on his grandfather's lap, Martin lay next to them on the ground and began talking to Nathan. Nathan eventually began to ask for his mother and to go back into the house; according to Martin, Nathan also said that his mother was in the garage "sleeping standing." As a result of the questioning, Martin learned that Nathan's father, Brian, had been there the previous night, that he had scared Nathan by banging on the door, and that he had fought with Barbara in the garage. Nathan also told Martin that Brian had placed the yellow rope around her neck.

{¶ 9} The state indicted Brian Siler in December 2001 on two counts of aggravated murder with death-penalty specifications, two counts of domestic violence, and single counts of endangering children, aggravated burglary, and violation of a protection order. He pleaded not guilty, and a trial commenced in May 2002. As part of its case-in-chief, the state called Deputy Singleton and Detective Martin to testify about Nathan's statements, and, over Siler's repeated objections, the trial court admitted the testimony as excited utterances pursuant to Evid.R. 803.

{¶ 10} On direct examination, Singleton testified that when he carried Nathan from the house, he asked Nathan, "Was daddy here today?" to which Nathan answered "no," and he testified that Nathan told him to "[f]ind mommy," pointing to the garage. On cross-examination, Singleton stated that Nathan did not cry or resist at any point.

{¶ 11} Martin testified that he had been briefed upon his arrival at the scene and before he began speaking with Nathan. He stated that when interviewing a child, he would "attempt to identify what information the child might have as to what had happened." He further testified that when he asked Nathan if anything had scared him the night before, Nathan responded, "Daddy did" by "[k]nocking loudly," and jumped up and demonstrated by banging on the front door. Martin stated that he asked if anything else had scared Nathan and that Nathan answered, "Daddy, mommy fighting" in the garage.

{¶ 12} Martin also testified that 30 to 45 minutes into his questioning, Nathan said that he was hungry and thirsty, and Martin arranged for him to have lunch with Terrie Cato, a nurse employed by the Ashland County Sheriff's Office and a friend of Barbara and Brian Siler.

{¶ 13} Martin further stated that when they returned from lunch, he again spoke with Nathan, this time in the presence of Jenny Taylor, a children's services investigator who had arrived at the scene. He asked "if anyone was

hurting mommy," to which Nathan responded, "Daddy did." Using a teddy bear that had been brought to the scene, Martin asked Nathan to demonstrate how daddy had hurt mommy, but Nathan did not respond. Martin then placed Taylor in different holds, asking Nathan, "Was this how daddy was hurting mommy?" When he placed his arm around the investigator's shoulder from behind, Nathan told him to move his arms up. Martin demonstrated, and Nathan said, "yes," and began crying; until this point in the interrogation, Martin stated, the child had not seemed nervous, upset, or in any distress. Nathan told Martin that "the yellow thing" held mommy upright in the garage, and, when Martin asked who put the yellow thing on her, the child responded, "Daddy." Martin did not question him further.

{¶ 14} Among other witnesses, the state also called Dr. Andrea McCollom, a forensic pathologist, who testified that Barbara's body displayed injuries that were inconsistent with suicide; rather, in her opinion, Barbara had been hanged after she had died from injuries caused by cervical compression consistent with a choke hold applied from behind.

{¶ 15} At the conclusion of the guilt phase of the trial, the jury found Siler guilty of all counts and specifications and, after the penalty phase, unanimously recommended the death penalty. However, the court rejected the recommendation and instead imposed a sentence of life imprisonment without parole.

{¶ 16} Siler then appealed to the Ashland County Court of Appeals and raised several assignments of error, including a Sixth Amendment challenge to the admission of Nathan's statements to Martin. The appellate court overruled that assignment of error, determined that Nathan's statements were admissible as excited utterances pursuant to Evid.R. 803(2), and affirmed the convictions. *State v. Siler*, Ashland App. No. 02–COA–028, 2003-Ohio-5749, 2003 WL 22429053. We denied review of his appeal. *State v. Siler*, 101 Ohio St.3d 1489, 2004-Ohio-1293, 805 N.E.2d 539.

{¶ 17} Siler then appealed to the United States Supreme Court, which granted certiorari, vacated the judgment of the court of appeals, and remanded the case with instructions to reconsider the Sixth Amendment issue in light of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177. *Siler v. Ohio* (2004), 543 U.S. 1019, 125 S.Ct. 671, 160 L.Ed.2d 494. On remand, the appellate court reversed Siler's convictions and remanded for a new trial, holding that Nathan's statements to Detective Martin were testimonial and that their admission during trial violated Siler's Sixth Amendment right to confront witnesses against him, stating that "there is presently no cognizable dispute concerning whether the child was unavailable * * * and whether defense counsel was given a prior opportunity to cross-examine him." *State v. Siler*, 164 Ohio App.3d 680, 2005-Ohio-6591, 843 N.E.2d 863, ¶ 49. The appellate court explained, "Martin's

questioning of Nathan, although resulting in allowable 'excited utterances' under the Ohio Rules of Evidence, was nonetheless a structured police interrogation as envisioned in *Crawford,* and therefore constituted testimonial evidence." Id. The court further held that the erroneous "admission of Nathan's statements was not harmless beyond a reasonable doubt." Id. at ¶ 50.

{¶ 18} The state appealed the decision that Nathan's statements to Martin were testimonial, contending that the appellate court misapplied *Crawford* and contravened our subsequent holding in *Stahl* when it concluded that Nathan's statements were testimonial because they resulted from police interrogation. The state urges that Nathan's statements should not be considered testimonial, asking us to apply the objective-witness test established in *Stahl* and to consider the statements from the perspective of a three-year-old declarant, who could not have understood that his statements would be available for use at a later trial.

{¶ 19} Siler, on the other hand, asserts that the objective-witness test adopted in *Stahl* is inapposite because *Stahl* involved statements made to a nurse for medical purposes, not to law-enforcement officers for investigatory purposes. He contends that in *Davis v. Washington,* 547 U.S. at 822, 126 S.Ct. 2266, 165 L.Ed.2d 224, the court set forth a different test that applies to statements generated from police interrogation, and he argues that *Davis* stands for the proposition that when the primary purpose of the police interrogation is to determine what has occurred in the past, without regard to an ongoing emergency, then the statements generated are testimonial for purposes of Confrontation Clause analysis, regardless of the age of the declarant.

{¶ 20} Thus, we are called upon to set forth an appropriate test for courts to apply when faced with a Sixth Amendment challenge to statements made by a child declarant in response to police interrogation.

### *Crawford, Davis,* and *Stahl*

{¶ 21} In *Crawford,* the United States Supreme Court held that the proper analysis for determining whether out-of-court statements violate the Confrontation Clause is not whether they are reliable but, rather, whether they are testimonial. 541 U.S. at 61, 124 S.Ct. 1354, 158 L.Ed.2d 177. The court went on to state that the Confrontation Clause does not apply to nontestimonial hearsay but that "[w]here testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Id. at 68, 124 S.Ct. 1354, 158 L.Ed.2d 177.

{¶ 22} Although the court expressly declined to set forth a comprehensive definition for the term "testimonial," it described three "formulations of this core class of 'testimonial' statements," one of which includes statements " 'made under circumstances which would lead an objective witness reasonably to believe that

the statement would be available for use at a later trial.'" Id., 541 U.S. at 51–52, 124 S.Ct. 1354, 158 L.Ed.2d 177, quoting the brief of amicus curiae National Association of Criminal Defense Lawyers. The court further stated, "Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; *and to police interrogations.*" (Emphasis added.) Id. at 68, 124 S.Ct. 1354, 158 L.Ed.2d 177.

{¶ 23} Two years after its decision in *Crawford,* the court revisited the issue of testimonial statements in the consolidated cases of *Davis v. Washington* and *Hammon v. Indiana,* 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224. *Davis* involved statements that a domestic-violence victim made to a 911 operator identifying her assailant and describing his whereabouts immediately after an assault, while *Hammon* involved statements made to police officers responding to a domestic-violence complaint after they had secured the scene. Id. at 817–821, 126 S.Ct. 2266, 165 L.Ed.2d 224.

{¶ 24} In considering whether the statements in these cases were testimonial, the court distinguished between police interrogations that concern an ongoing emergency and those that relate to past criminal conduct. Id., 547 U.S. at 822, 126 S.Ct. 2266, 165 L.Ed.2d 224. Thus, it formulated what courts around the country have come to refer to as the primary-purpose test (see, e.g., *People v. Geier* (2007), 41 Cal.4th 555, 61 Cal.Rptr.3d 580, 161 P.3d 104; *State v. Kirby* (2006), 280 Conn. 361, 908 A.2d 506): "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." 547 U.S. at 822, 126 S.Ct. 2266, 165 L.Ed.2d 224.

{¶ 25} Applying that test, the court determined that "the circumstances of [the 911] interrogation [in *Davis*] objectively indicate its primary purpose was to enable police assistance to meet an ongoing emergency." Id. at 828, 126 S.Ct. 2266, 165 L.Ed.2d 224. Accordingly, those statements were nontestimonial. Id. In *Hammon,* however, the court stated, "Objectively viewed, the primary, if not indeed the sole, purpose of the interrogation was to investigate a possible crime." Id., 547 U.S. at 830, 126 S.Ct. 2266, 165 L.Ed.2d 224. Therefore, the court held that those statements were testimonial. Id.

{¶ 26} In *State v. Stahl,* 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, we considered whether an adult rape victim had made testimonial statements to a nurse practitioner during a medical examination at a hospital DOVE unit specializing in health care for victims of rape and domestic violence. There, for

analysis of a statement made to a medical professional, we adopted the objective-witness test from *Crawford*, stating, "For Confrontation Clause purposes, a testimonial statement includes one made 'under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" Id. at paragraph one of the syllabus, quoting *Crawford*, 541 U.S. at 52, 124 S.Ct. 1354, 158 L.Ed.2d 177. We further held, "In determining whether a statement is testimonial for Confrontation Clause purposes, courts should focus on the expectation of the declarant at the time of making the statement; the intent of a questioner is relevant only if it could affect a reasonable declarant's expectations." Id. at paragraph two of the syllabus.

{¶ 27} In *Stahl*, we expressly acknowledged *Davis* and *Hammon* but distinguished them, stating, "They involve statements made to law-enforcement officers, while the statement at issue here covers one made to a medical professional at a medical facility for the *primary* purpose of receiving proper medical treatment and not investigating past events related to criminal prosecution." (Emphasis sic.) 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, ¶ 25. Applying the objective-witness test, instead, we concluded that the statements made by the rape victim to the nurse were nontestimonial because she "could have reasonably believed that although the examination conducted at the DOVE unit would result in scientific evidence being extracted for prosecution purposes, the statement would be used primarily for health-care purposes." Id. at ¶ 47.

### The Primary–Purpose Test

{¶ 28} Although the state and amicus curiae, the American Prosecutors Research Institute ("APRI"), invite us to apply the objective-witness test, as we did in *Stahl*, we decline to do so because the primary-purpose test enunciated in *Davis* is the more appropriate analysis. Contrary to the assertions of the state and APRI, *Stahl* is factually distinguishable from the instant case based on the identity of the interrogator and the purpose of the questioning. The distinction is as significant here as it was in *Stahl*, where we specifically concluded that the objective-witness test applied, rather than the primary-purpose test in *Davis*, because of the *lack* of a law-enforcement interrogator. 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, ¶ 25. Moreover, the court in *Davis* acknowledged that its "holding is not an 'exhaustive classification of all conceivable statements— or even all conceivable statements in response to police interrogation,' *supra*, [547 U.S. at 822, 126 S.Ct. 2266, 165 L.Ed.2d 224], but rather a resolution of the cases before us *and those like them*." (Emphasis added.) 547 U.S. at 830, 126 S.Ct. 2266, 165 L.Ed.2d 224, fn. 5.

{¶ 29} Since *Davis*, courts have consistently applied the primary-purpose test to statements that a child declarant made to police or those determined to be police agents, and we are aware of no courts that continue to apply the objective-

witness test in such cases. See, e.g., *People v. Cage* (2007), 40 Cal.4th 965, 56 Cal.Rptr.3d 789, 155 P.3d 205 (15–year–old's statements to police); *People v. Sharp* (Colo.App.2006), 155 P.3d 577 (five-year-old's statements to forensic interviewer during visit arranged by police); *Hernandez v. State* (Fla.App.2007), 946 So.2d 1270 (statements made by child of unknown age to "Child Protection Team" nurse); *People v. Stechly* (2007), 225 Ill.2d 246, 312 Ill.Dec. 268, 870 N.E.2d 333 (five-year-old's statements to child-sex-abuse personnel); *State v. Henderson* (Kan.2007), 160 P.3d 776 (three-year-old's statements to police and child-protective-services worker); *State v. Justus* (Mo.2006), 205 S.W.3d 872 (three-year-old's statements to child-abuse investigators); *State v. Buda* (2006), 389 N.J.Super. 241, 912 A.2d 735 (three-year-old's statements to youth-services worker); *State v. Blue*, 2006 N.D. 134, 717 N.W.2d 558 (four-year-old's statements to forensic interviewer with police observing); *In re S.R.*, 2007 Pa.Super. 79, 920 A.2d 1262 (four-year-old's statements to forensic interview specialist); *State v. Hooper* (Aug. 11, 2006), Payette App. No. 31025, 2006 WL 2328233 (Idaho) (six-year-old's statements to sexual trauma personnel during visit arranged and observed by police).

{¶ 30} Thus, we conclude that to determine whether a child declarant's statement made in the course of police interrogation is testimonial or nontestimonial, courts should apply the primary-purpose test: "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. at 822, 126 S.Ct. 2266, 165 L.Ed.2d 224.

{¶ 31} Having determined that the primary-purpose test applies in this instance, we next consider the argument of the state and APRI that a child's statements to police are nontestimonial when the child, because of his or her age and limited understanding of court or trial, could not reasonably expect that those statements may be used in a later criminal proceeding.

{¶ 32} We recognize, as did the court of appeals in this case, that "younger children have lesser reflective capabilities," *Siler*, 164 Ohio App.3d 680, 2005-Ohio-6591, 843 N.E.2d 863, at ¶ 9, citing *State v. Wagner* (1986), 30 Ohio App.3d 261, 30 OBR 458, 508 N.E.2d 164; we further acknowledge the authorities submitted by APRI indicating that children lack an understanding of court proceedings and testimony. See, e.g., R. Friedman, The Conundrum of Children, Confrontation, and Hearsay (2002), 65 Law & Contemp.Prob. 243, 251–252.

{¶ 33} The court's analysis in *Davis*, however, does not focus on the expectations of the declarant in order to determine whether statements are testimonial; rather, the test set forth in *Davis* centers on the statements and the objective circumstances indicating the primary purpose of the interrogation. 547 U.S. at 822, 126 S.Ct. 2266, 165 L.Ed.2d 224. In this way, the argument by the state and APRI that we should focus on the cognitive limitations of a child who made the statements to police is inconsistent with the primary-purpose test.

{¶ 34} The state and APRI cite numerous cases in support of their position that statements made by child declarants are nontestimonial because of their lack of understanding. Those cases are inapposite, however, because they do not concern statements that a child made to law-enforcement officers or to individuals held to be agents of law enforcement. See *People v. Vigil* (Colo.2006), 127 P.3d 916 (seven-year-old's statements to doctor, father, and father's friend); *Commonwealth v. DeOliveira* (2006), 447 Mass. 56, 849 N.E.2d 218 (six-year-old's statements to doctor); *State v. Scacchetti* (Minn.2006), 711 N.W.2d 508 (three-year-old's statements to nurse); *State v. Brigman* (2006), 178 N.C.App. 78, 632 S.E.2d 498 (children's statements to mother); *State v. Johnson*, Butler App. No. CA 2005–10–422, 2006-Ohio-5195, 2006 WL 2796826 (nine-year-old's statements to medical staff); *State v. Copley*, Franklin App. No. 04AP–1128, 2006-Ohio-2737, 2006 WL 1495039 (three-year-old's statements to mother); *State v. Muttart*, Hancock App. No. 5–05–08, 2006-Ohio-2506, 2006 WL 1381638 (five- and six-year-old children's statements to medical professional), affirmed in part and reversed in part, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944; *United States v. Coulter* (2005), 62 M.J. 520 (two-year-old's statements to mother).

{¶ 35} Only one case cited by the state and APRI concludes that a child's statements made during a *police* interrogation were nontestimonial: *Lagunas v. State* (Tex.App.2005), 187 S.W.3d 503. There, police responding to a 911 call found an injured woman who had been abducted from her home but who had managed to escape her captor. She told the police that her two children, ages two and four, were still at home, and an officer was dispatched to check on their safety. Upon arrival, the officer entered the house, found the children in bed, and asked the four-year-old if everything was okay. As the *Lagunas* court recounted, "[The child] responded that it wasn't and added, 'Her mommy was dead.' At this point, [the officer] asked [her] what happened to her mother. She responded, 'A bad man had killed her and took her away' and grew more upset. * * * He did not question [her] further." *Lagunas*, 187 S.W.3d at 520. The Texas court of appeals concluded that the child's statements were nontestimonial after applying the objective-witness test, in which it considered the age of the child.

{¶ 36} The court's analysis and decision predated the establishment of the primary-purpose test in *Davis*. Moreover, although the court in *Lagunas* considered the child's age in its analysis, it specifically stated, "We need not decide now whether, as a general rule, statements by children are inherently non-testimonial or whether [the child's] age alone renders her statements non-testimonial." 187 S.W.3d at 519. Furthermore, the court's analysis paralleled the analysis in *Davis* by focusing on the purpose of the interrogation; as the *Lagunas* court explained, the officer's questioning of the child "was closer in nature to a preliminary question in which [the officer] sought to clarify [the child's] spontaneous statement that her mother was dead. There was not time to formulate careful, structured questioning. Instead, [the officer's] questions were consistent with the behavior of a reasonable adult seeking (in some ways successfully, in some ways not) to calm a frightened child in the middle of the night. Significantly, after calming [the child], [the officer] asked her no further questions regarding the circumstances of her mother's disappearance." Id. at 520. Thus, *Lagunas* supports the conclusion not only that the primary-purpose test is appropriate in cases involving police interrogation of a child but also that the declarant's age is not dispositive when determining whether statements to police are testimonial.

{¶ 37} We similarly distinguish *State v. Bobadilla* (Minn.2006), 709 N.W.2d 243, which APRI primarily relies upon for the proposition that a child's limited cognitive ability renders his statements nontestimonial. There, a three-year-old sex-abuse victim made statements to a child-protection worker during a risk-assessment interview while a police detective observed. The Minnesota Supreme Court held that the child's statements were nontestimonial because "the interview of [the child] was initiated by a child-protection worker in response to a report of sexual abuse for the overriding purpose of assessing whether abuse occurred, and whether steps were therefore needed to protect the health and welfare of the child" and because "neither [the child] nor the child-protection worker were acting, to a substantial degree, in order to produce a statement for trial, and therefore [the child's] statements in the assessment interview were not testimonial." *Bobadilla*, 709 N.W.2d at 255–256.

{¶ 38} Although the court acknowledged the child's limited cognitive abilities, this was not, as APRI claims, the focal point of its analysis; rather, the purpose of the interview constituted the dispositive issue: "If part of the purpose of this interview was to produce a statement for use at a future trial, such a purpose was at best incidental to the main purpose: assessing and responding to imminent risks to [the child's] health and welfare." Id. at 255. Moreover, as with *Lagunas*, the court decided *Bobadilla* without the benefit of the analysis that the United States Supreme Court set forth in *Davis*.

{¶ 39} We are aware of no case in which a court has concluded that a declarant's age rendered statements to police nontestimonial. Rather, courts have held that children's statements to police or police agents are testimonial in circumstances that indicate that no ongoing emergency existed and that the primary purpose of the interrogation was to establish past events potentially related to later criminal prosecution. See, e.g., *T.P. v. State* (Ala.Crim.App.2004), 911 So.2d 1117 (eight-year-old's statements to social worker and investigator as part of criminal investigation); *People v. Cage*, 40 Cal.4th 965, 56 Cal.Rptr.3d 789, 155 P.3d 205 (15–year–old's statements to police); *People v. Sisavath* (2004), 118 Cal.App.4th 1396, 13 Cal.Rptr.3d 753 (four-year-old's statements to police); *People v. Sharp*, 155 P.3d 577 (five-year-old's statements to forensic interviewer during visit arranged by police); *People ex rel. R.A.S.* (Colo.App.2004), 111 P.3d 487 (four-year-old's statements to police); *Hernandez v. State*, 946 So.2d 1270 (statements made by child of unknown age to "Child Protection Team" nurse); *State v. Grace* (App.2005), 107 Hawai'i 133, 111 P.3d 28 (ten- and eleven-year-old children's statements to police); *State v. Hooper*, Payette App. No. 31025, 2006 WL 2328233 (Idaho) (six-year-old's statements to sexual trauma personnel during visit arranged by police); *People v. Stechly*, 225 Ill.2d 246, 312 Ill.Dec. 268, 870 N.E.2d 333 (five-year-old's statements to child-sex-abuse personnel); *State v. Henderson*, 160 P.3d 776 (three-year-old's statements to police and child-protective-services worker); *State v. Snowden* (Md.App.2005), 385 Md. 64, 867 A.2d 314 (eight- and ten-year-old children's statements to sex-abuse personnel during police investigation); *State v. Justus*, 205 S.W.3d 872 (three-year-old's statements to child-abuse investigators); *State v. Blue*, 2006 ND 134, 717 N.W.2d 558 (four-year-old's statements to forensic interviewer with police observing); *State v. Buda*, 389 N.J.Super. 241, 912 A.2d 735 (three-year-old's statements to youth-services worker); *State v. Mack* (2004), 337 Or. 586, 101 P.3d 349 (three-year-old's statements to case worker in an interview directed by the police); *In re S.R.*, 2007 Pa.Super. 79, 920 A.2d 1262 (four-year-old's statements to forensic interview specialist); *Rangel v. State* (Tex.App.2006), 199 S.W.3d 523 (six-year-old child's statements to child-protective services); *United States v. Bordeaux* (C.A.8, 2005), 400 F.3d 548 (statements by child of unknown age to forensic interviewer).

{¶ 40} Significantly, several courts have expressly rejected the state's and APRI's argument that a child's statements are necessarily nontestimonial when the child would not be able to understand that the statements would be used in a later criminal proceeding. *State v. Henderson*, 160 P.3d at 785, citing *State v. Justus*, 205 S.W.3d 872 ("A young victim's awareness, or lack thereof, that her statement would be used to prosecute, is not dispositive of whether her statement is testimonial"); *State v. Snowden*, 385 Md. at 89–90, 867 A.2d 314 ("we are unwilling to conclude that, as a matter of law, young children's statements cannot

possess the same testimonial nature as those of other, more clearly competent declarants"); *Commonwealth v. DeOliveira*, 447 Mass. at 66, 849 N.E.2d 218 (declining to adopt the same argument that APRI presents here); *People v. Vigil*, 127 P.3d at 926, fn. 8 ("if a child makes a statement to a government agent as part of a police interrogation, his statement is testimonial irrespective of the child's expectations regarding whether the statement will be available for use at a later trial"); see, also, *State v. Hooper*, Payette App. No. 31025, 2006 WL 2328233, *17.

{¶ 41} Thus, we conclude that the age of a declarant is not determinative of whether a testimonial statement has been made during a police interrogation.

{¶ 42} Our conclusions in this case regarding a police interrogation of a child do not affect our decision in *Stahl*, which applied the objective-witness test to determine whether a declarant had made testimonial statements during an interview conducted by a nurse at a DOVE unit for purposes other than to investigate a past crime. In this regard, we agree with the Supreme Court of Illinois, in *People v. Stechly*, which recently concluded that the objective-witness test applied to statements that a five-year-old child made to her mother but that the primary-purpose test set forth in *Davis* applied to statements that she made during an interrogation conducted by an agent of the police. 225 Ill.2d at 299–302, 312 Ill.Dec. 268, 870 N.E.2d 333. See, also, *Vigil*, 127 P.3d at 926, fn. 8 (applying the objective-witness test to a child's statements to a nonpolice questioner but stating that the child's statements to police during an investigation are testimonial regardless of child's expectations); and *State v. Mechling* (2006), 219 W.Va. 366, 633 S.E.2d 311 (the objective-witness test applies, generally, but statements generated from police interrogation require application of the analysis in *Davis*); but see *State v. Alvarez* (App.2006), 213 Ariz. 467, 143 P.3d 668; and *People v. Cage*, 40 Cal.4th 965, 56 Cal.Rptr.3d 789, 155 P.3d 205 (holding that after *Davis*, the objective-witness test no longer applies).

### Application of the Primary–Purpose Test in This Case

{¶ 43} The record reveals that before Detective Martin arrived at the scene, Deputy Singleton had entered the home, awakened Nathan, and taken him outside. The Ashland County Sheriff's Office had secured the crime scene and had begun its investigation into Barbara's death. Martin testified that he had been briefed before he began questioning Nathan, that Nathan did not appear nervous or upset, and that Nathan was sitting in his grandfather's lap during the questioning. Thus, this record does not reflect the existence of an ongoing emergency.

{¶ 44} Martin identified the primary purpose of Nathan's questioning when he testified that he would "attempt to identify what information the child might have as to what had happened." In addition, Nathan's statements concerned what had

occurred the night before in relation to Martin's effort to establish past events possibly relevant to a criminal prosecution.

{¶ 45} The interrogation before us parallels that in *Hammon*, where the court stated: "It is entirely clear from the circumstances that the interrogation was part of an investigation into possibly criminal past conduct * * *. There was no emergency in progress; the interrogating officer testified that he had heard no arguments or crashing and saw no one throw or break anything * * *. When the officers first arrived, [the declarant] told them that things were fine, * * * and there was no immediate threat to her person." 547 U.S. at 830, 126 S.Ct. 2266, 165 L.Ed.2d 224. The court further stated, "[The declarant's] statements were neither a cry for help nor the provision of information enabling officers immediately to end a threatening situation * * *." Id., 547 U.S. at 832, 126 S.Ct. 2266, 165 L.Ed.2d 224.

{¶ 46} As the court stated with respect to the interrogation in *Hammon*, "Objectively viewed, the primary, if not indeed the sole, purpose of the interrogation was to investigate a possible crime * * *." Id., 547 U.S. at 830, 126 S.Ct. 2266, 165 L.Ed.2d 224. We conclude that the same is true of this interrogation.

## Conclusion

{¶ 47} In conformity with *Davis* and the weight of authority in other jurisdictions, we conclude that Nathan made testimonial statements to Detective Martin, and as a result we are constrained to affirm the judgment of the court of appeals. We further agree with the statement by the court of appeals that, for purposes of remand, the Confrontation Clause " 'does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.' " *Siler*, 164 Ohio App.3d 680, 2005-Ohio-6591, 843 N.E.2d 863, ¶ 51, quoting *Crawford*, 541 U.S. at 59, 124 S.Ct. 1354, 158 L.Ed.2d 177, fn. 9.

Judgment affirmed.

MOYER, C.J., and PFEIFER, O'CONNOR, and McGRATH, JJ., concur.

LUNDBERG STRATTON and LANZINGER, JJ., concur in part and dissent in part.

PATRICK M. McGRATH, J., of the Tenth Appellate District, sitting for CUPP, J.

---

**LANZINGER, J., concurring in part and dissenting in part.**

{¶ 48} I concur in the judgment and in paragraph two of the syllabus only, because the majority unduly limits the primary-purpose rule stated in paragraph one by referring only to a "child" declarant and expands the scope of the opinion beyond the stated issue.

{¶ 49} As we elaborate our understanding of *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, and our examination of Ohio law regarding what statements are testimonial for purposes of the Confrontation Clause, I believe we should articulate clear guidance for judges who must make these decisions initially. In *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, we declined to expand the definition of "testimonial statements" to include statements made to a medical professional for purposes of receiving medical treatment or diagnosis. In *Stahl*, we adopted the "objective witness" formulation set forth in *Crawford* to discover whether statements were made " 'under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' " *Stahl* at ¶ 36, quoting *Crawford*, 541 U.S. at 52, 124 S.Ct. 1354, 158 L.Ed.2d 177. We adopted the objective-witness test not because the declarant was an adult but because of the identity of the questioner—a medical professional, rather than a law enforcement officer.

{¶ 50} In analyzing whether statements are testimonial, the identity of the questioner is the first issue to resolve. Whenever the interrogators are members of law enforcement, the rule regarding any statements made by a declarant in response is governed by the primary-purpose test, as explained in *Davis v. Washington* (2006), 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224. If the primary purpose of the police questioning is to elicit statements that relate to an ongoing emergency, the statements are nontestimonial; if the primary purpose is to prove past events that relate to a potential criminal prosecution, they are testimonial. I agree with paragraph two of the syllabus, which makes it clear that age is irrelevant when a declarant is under police interrogation. In other words, the primary-purpose test is used if the police are questioning.

{¶ 51} Assuming the questioner is not a member of law enforcement, as was the case in *Stahl*, the objective-witness standard (at least for an adult) applies: whether the statement was "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford*, 541 U.S. at 52, 124 S.Ct. 1354, 158 L.Ed.2d 177.

{¶ 52} The majority opinion frames the issue of the instant case to set forth "an appropriate test for courts to apply when faced with a Sixth Amendment challenge to statements made by a child declarant *in response to police interrogation.*" (Emphasis added.) Thus, to the extent that the majority discusses consequences of statements made by children to interrogators who are not law enforcement, the opinion exceeds its self-imposed boundary.

{¶ 53} In my view, it is still an open question whether children, by virtue of their reasoning abilities, should be subject to the objective-witness standard as expressed in *Stahl* when they are questioned by those other than police officers.

We should hesitate to express dicta on this issue when the ramifications on any ruling regarding testimonial statements can be so great, particularly where the child is the victim as well as the witness, in, for example, sexual abuse cases. I therefore dissent as to the portion of the opinion that exceeds the issue of the police interrogation of children.

LUNDBERG STRATTON, J., concurs in the foregoing opinion.

———

Ramona Francesconi Rogers, Ashland County Prosecuting Attorney, and Joyce Anderson, Assistant Prosecuting Attorney, for appellant.

David H. Bodiker, Ohio Public Defender, and Jill E. Stone and Craig M. Jaquith, Assistant Public Defenders, for appellee.

Alice Anna Phillips, urging reversal for amicus curiae, American Prosecutors Research Institute.