**CITY OF GARFIELD HEIGHTS, Appellee,**

v.

**WINBUSH, Appellant.**

[Cite as *Garfield Hts. v. Winbush*, 187 Ohio App.3d 302, 2010-Ohio-1658.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 92276.

Decided April 15, 2010.

Timothy L. Riley, Garfield Heights Prosecuting Attorney, and Je'Nine A. Nickerson, for appellee.

Robert L. Tobik, Cuyahoga County Public Defender, and David M. King, Assistant Public Defender, for appellant.

---

PATRICIA ANN BLACKMON, Judge.

{¶ 1} Appellant Mario Winbush appeals his convictions following a jury trial in the Garfield Heights Municipal Court. Winbush assigns the following errors for our review:

I. Defendant's conviction for counts of failure to have insurance, disregarding public safety, speeding, and fleeing and eluding were against the manifest weight of the evidence.

II. The trial court erred by denying the accused's request for an investigator in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution.

III. The trial court erred by allowing the prosecutor to elicit hearsay testimony from Officer Marks.

IV. The trial court erred by allowing inadmissible testimonial statements to be admitted through non-declarant testimony in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution.

V. The trial court erred by admitting the written witness statement of Charletta Peterson in contravention of Evidence Rule 801, the Sixth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution.

{¶ 2} Having reviewed the record and pertinent law, we reverse Winbush's convictions and remand this matter to the trial court. The apposite facts follow.

{¶ 3} On March 18, 2008, the city of Garfield Heights charged Winbush with fleeing and eluding, failure to have insurance, disregarding public safety, and speeding. Winbush pleaded not guilty at his arraignment, and on September 22, 2008, a jury trial was held.

### Jury Trial

{¶ 4} Five witnesses testified at the trial. Officer John Marks, a 20–year veteran of the Garfield Heights Police Department, testified that on March 17, 2008, he was detailed to traffic enforcement. On that date at 10:52 a.m., he observed a 1992 gold Cadillac speeding. Using his radar, he confirmed that the vehicle was moving at 44 miles per hour in a 25-miles-per-hour zone. He stopped

the vehicle and advised Winbush why he was stopped, and Officer Marks requested his driver's license and proof of insurance. Winbush told the officer that he did not have his driver's license and identified himself as Amad Dale as he also provided his social security number and date of birth.

{¶ 5} Officer Marks stated that when he returned to his police cruiser to verify the information, the vehicle sped away. Officer Marks gave chase, pursuing the vehicle into the city of Cleveland but lost sight of the vehicle in the vicinity of Benwood Avenue. Officer Marks abandoned the pursuit and returned to the station.

{¶ 6} Officer Marks had a good look at the driver at the time he stopped the vehicle and described the driver as a black male with dreadlocked hair, who was wearing a black baseball hat and a black and white checkered coat. Officer Marks later discovered that the driver of the vehicle had provided false information.

{¶ 7} Officer Marks was able to locate and visit the home of the vehicle's registered owner, Charletta Peterson. Peterson indicated that she had loaned her car to someone named Fred, whom she had met two months earlier. Peterson visited the police station later that day and indicated that Fred had called her and apologized for the chase and told her where she could find her car.

{¶ 8} Officer Timothy Baon testified that he assisted in the chase but never saw the driver. Officer Baon stated that as a result of the telephone call that Peterson received from Fred, he conducted a reverse 4-1-1 search to determine the location of the call's origin. Officer Baon subsequently responded to that location, where he observed two persons, one of whom fit the description Officer Marks had provided.

{¶ 9} Officer Baon later obtained a photograph of the person who fit the description Officer Marks had provided. He showed Officer Marks the picture, and he confirmed that was the person involved in the chase. Officer Baon created a photo array containing the picture of Winbush and showed it to the vehicle's owner. Officer Baon stated that the vehicle's owner indicated that the picture of Winbush looked like the person she knew as Fred. Officer Baon testified that the vehicle's owner later contacted them to indicate that the photo of Winbush was the person she had loaned her car to, but she was afraid of reprisals for identifying him.

{¶ 10} At trial, brothers Willie and Troy Clark, as well as their mother, Eleanor Clark, testified that they had known Winbush for more than 20 years. All three witnesses testified that Winbush was at their home in Cleveland Heights on the morning in question. All three witnesses testified that Winbush stayed at their home from approximately 11:00 a.m. until noon.

{¶ 11} The jury found Winbush guilty of all charges. On September 30, 2008, the trial court sentenced Winbush to prison terms of six months for fleeing and eluding, one month for failure to have insurance, and five days for speeding. The trial court ordered the sentences served consecutively. In addition, the trial court imposed court costs of $500, assessed six points on Winbush's license, and suspended his driver's license for 30 days.

{¶ 12} The trial court granted a stay of execution of the sentence. Winbush now appeals.

## Admission of Evidence

{¶ 13} We will address the third, fourth, and fifth assigned errors together because of their common basis in fact and law and because we find them dispositive of the appeal. Winbush argues that admission through the testimony of Officers Marks and Baon of hearsay evidence relating to what Peterson told them violated his Sixth Amendment right to confront the witnesses against him pursuant to *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, and *Davis v. Washington* (2006), 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224. We agree.

{¶ 14} The admission of evidence lies within the broad discretion of a trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice. *State v. Cunningham*, 6th Dist. No. WD–08–063, 2009-Ohio-6970, 2009 WL 5174151, citing *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 43. "Abuse of discretion" connotes more than an error of law or judgment; it implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.

{¶ 15} The Sixth Amendment to the United States Constitution guarantees that a person accused of committing a crime has the right to confront and cross-examine witnesses testifying against him. *Pointer v. Texas* (1965), 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923. In *Crawford*, the United States Supreme Court held that "[w]here testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." 541 U.S. at 68, 124 S.Ct. 1354, 158 L.Ed.2d 177. Rejecting its former hearsay formulations, the Supreme Court held that the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." Id. at 53–54, 124 S.Ct. 1354, 158 L.Ed.2d 177 The Supreme Court declined to provide a comprehensive definition of "testimonial" but indicated that the term includes, at a minimum, prior

testimony at a preliminary hearing, before a grand jury, or at a former trial and statements made during police interrogations. Id.

{¶ 16} Section 10, Article I, of the Ohio Constitution contains a similar guarantee of confrontation, and Ohio construes its Confrontation Clause as providing the same guarantee as that of the federal constitution. *State v. Self* (1990), 56 Ohio St.3d 73, 78, 564 N.E.2d 446; *State v. McKenzie*, Cuyahoga App. No. 87610, 2006-Ohio-5725, 2006 WL 3095671, at ¶ 2 ("Although the 'face to face' language of the Ohio Constitution would arguably appear to grant even greater rights to confrontation, the Ohio Supreme Court has construed Section 10, Article I, to parallel that of the federal constitution, rejecting the argument that the section requires an interpretation at its literal extreme").

{¶ 17} The Sixth Amendment's Confrontation Clause applies only to testimonial statements and does not apply to nontestimonial statements. *State v. Siler*, 116 Ohio St.3d 39, 2007-Ohio-5637, 876 N.E.2d 534, ¶ 21. If a statement is testimonial, then the Confrontation Clause requires a showing of both the declarant's unavailability and the defendant's opportunity to have previously cross-examined the declarant. Id. If the statement is nontestimonial, it is merely subject to the regular admissibility requirements of the hearsay rules. Id.

{¶ 18} "The United States Supreme Court once stated that, at a minimum, testimonial statements are those given in prior testimony (such as at a former trial, before a grand jury or at a preliminary hearing) or those made during a police interrogation." *State v. Peeples*, 7th Dist. No. 07 MA 212, 2009-Ohio-1198, 2009 WL 737922, ¶ 20, citing *Crawford*, 541 U.S. at 68, 124 S.Ct. 1354, 158 L.Ed.2d 177. Thereafter, the court distinguished different statements to law-enforcement officers or agents thereof based upon the purpose of the interrogation. Id., citing *Davis*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224.

{¶ 19} "Specifically, statements are nontestimonial if made during a police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable the police to meet an ongoing emergency." *Peeples*, 2009-Ohio-1198, ¶ 21, citing *Davis* at 820. On the other hand, statements are testimonial if they are made under circumstances objectively indicating that there is no ongoing emergency as the primary purpose of the interrogation is to establish past events relevant to a later criminal case. Id.

{¶ 20} In the instant case, Peterson's statements to Officers Marks and Baon, as well as her subsequent written statement, which was admitted into evidence, were clearly testimonial. The testimony at trial established that Peterson was contacted approximately two hours after Officer Marks abandoned the chase of the fleeing vehicle. Therefore, Officer Marks was no longer responding to an

ongoing emergency; thus, the circumstances objectively indicate that the statements obtained were primarily for the purposes of establishing past events relevant to a later prosecution.

{¶ 21} The prosecution's case largely consisted of hearsay testimony admitted under various exceptions to the hearsay rule, relating to what Peterson allegedly told Officer Marks and Baon regarding Winbush. Those persons were police officers, whose credibility is generally well regarded. Peterson's credibility was the pivotal issue in this case, and yet she did not testify and was not subject to cross-examination.

{¶ 22} Both Officers Marks and Baon testified exhaustively about the contact they made with Peterson, that she had indicated that she had loaned her car to someone named Fred and that Fred later called to apologize for the chase and told her where the car could be found. When the officers presented Peterson with the photo array that included a picture of Winbush, she initially stated that the picture of Winbush looked like the person she knew as Fred.

{¶ 23} The officers testified that Peterson subsequently contacted them and indicated that the picture of Winbush was the person she knew as Fred and stated that she was afraid of reprisals for identifying Winbush. Peterson, who had been subpoenaed for trial, failed to appear.

{¶ 24} Here, given that Peterson did not testify in this case, her credibility, which was critical to the issues in this case, could not be challenged on cross-examination. On this record, the testimony of the officers regarding Peterson's statement violated the Sixth Amendment's Confrontation Clause, was prejudicial, and should not have been admitted. Accordingly, we sustain the third, fourth, and fifth assigned errors.

{¶ 25} Our disposition of the foregoing assigned errors warrants a new trial and thereby renders the remaining assigned errors moot. See App.R. 12(A)(1)(c).

Judgment reversed
and cause remanded.

KILBANE, P.J., and SWEENEY, J., concur.