[Cite as *State v. Worley*, 2011-Ohio-2779.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 94590

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## PEREZ WORLEY

DEFENDANT-APPELLANT

## JUDGMENT:
## REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-526042-A

**BEFORE:** Kilbane, A.J., Stewart, J., and Boyle, J.

**RELEASED AND JOURNALIZED:** June 9, 2011

ATTORNEY FOR APPELLANT

Myron P. Watson
420 Lakeside Place
323 West Lakeside Avenue
Cleveland, Ohio 44113-1009

ATTORNEYS FOR APPELLEE

William D. Mason
Cuyahoga County Prosecutor
Belinda Kyles-Gest
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, A.J.:

{¶ 1} Defendant-appellant, Perez Worley (Worley), appeals his convictions. Finding merit to the appeal, we reverse and remand.

{¶ 2} In July 2009, Worley was charged in a 15-count indictment. Counts 1 and 2 charged him with attempted murder, Counts 3-6 charged him with aggravated robbery, Counts 7-10 charged him with felonious assault, Counts 11-14 charged him with kidnapping, and Count 15 charged him with

carrying a concealed weapon.[1]

{¶ 3} The matter proceeded to a jury trial, at which the following evidence was adduced.

{¶ 4} On June 24, 2009, Ernest Wells (Wells) and Demarcus Jones (Jones) were approached by Worley, while they were at a gas station on East 125th and Superior in East Cleveland. Worley parked his minivan at the pump, exited his vehicle, and began talking to Jones. He asked Jones if he had any crack or marijuana. Jones replied, "no." Worley then got back into his minivan and drove away. Jones and Wells eventually left the gas station and began to walk toward East 125th Street.

{¶ 5} As they were walking, Wells observed Worley and another male, later identified as codefendant Jonathan Hansard (Hansard), run up to Jones. Wells testified that Worley told Jones, "give me everything," while pulling out a gun and putting it to Jones's head. Worley then pointed the gun at Wells and shot him in the groin. Jones proceeded to run away after Worley shot Wells. Worley and Hansard began to chase after him. Worley shot Jones in the chest and leg as he was running away. East Cleveland police officers arrived on the scene. Wells told officers that he did not know who shot at him and Jones, but that the shooter drove a maroon minivan. Wells and Jones were transported to the hospital by ambulance.

---

[1]Each of Counts 1-14 carried a one- and three-year firearm specification.

{¶ 6} East Cleveland Police Officer David Perez (Perez) responded to the scene. While at the gas station, Perez spoke with Jovan Dawson who is known in the neighborhood as "Joe." Joe was at the gas station when the incident occurred. Joe advised Perez that Worley was in the area. Subsequently, Perez viewed the surveillance video at the gas station. He observed Worley exit a burgundy van. He also observed Wells and Jones on the video, walking westbound. Then he observed two males walk through the gas station parking lot, heading in the same direction as Wells and Jones. One of the males on the video was wearing a white t-shirt and jeans and tugging at his waistband. Perez testified that he was able to identify him as Worley because he observed his face on the surveillance video when he first exited his van, and he was wearing a white t-shirt and jeans. Perez testified that the gas station also had videotape of Worley, who came back later asking "if it was caught on tape."

{¶ 7} East Cleveland Detective Kyle Cunningham (Cunningham) investigated this incident. Cunningham testified that Worley became a person of interest when Perez advised him that he interviewed Joe, who indicated that Worley was at the gas station, and the surveillance video revealed that Worley asked the gas station attendant "if it was caught on tape." Cunningham further testified that he learned from Joe that Hansard was with Worley when he shot Wells. Cunningham spoke with Hansard,

who provided information consistent with what he already learned about the shooting. Cunningham also testified that he spoke with Worley about the incident. When he began to ask Worley questions, Worley said that "you all already know what it is. I am in trouble."

{¶ 8} The jury found Worley guilty of all charges and specifications. The trial court sentenced him to seven years in prison on each of Counts 1 and 2 (attempted murder), three years in prison on each of Counts 3-6 (aggravated robbery), Counts 7-10 (felonious assault), and Counts 11-14 (kidnapping), and one year on Count 15 (carrying a concealed weapon). The trial court ordered that Counts 1 and 2 be served consecutive to each other, Counts 3 and 5 merged, Counts 4 and 6 merged, Count 7 merged with Count 9, Count 8 merged with Count 10, Count 11 merged with Count 13, and Count 12 merged with Count 14. The trial court further ordered that Counts 3 and 4 be served concurrent to each other and consecutive to Counts 1 and 2, Counts 7 and 8 be served concurrent to each other and consecutive to Counts 1, 2, 3, and 4, Counts 11 and 12 be served concurrent to each other and consecutive to Counts 1, 2, 3, 4, 7, and 8, and Count 15 to be served concurrent to all other counts. The court also merged the one- and three-year firearm specifications, for an aggregate of three years, and ordered that the three-year firearm specification be served prior to and consecutive to Count 1 and 2 for a total of 29 years in prison.

{¶ 9} Worley now appeals, raising two assignments of error for review.

ASSIGNMENT OF ERROR ONE

**"The trial court erred when it allowed State witnesses to testify to out-of-court statements purportedly made by others who did not testify in trial in violation of [Worley's] Sixth Amendment right of confrontation."**

{¶ 10} Worley argues that the testimony of Perez and Cunningham regarding what Joe and Hansard told them, violated his Sixth Amendment right to confront the witnesses against him. He claims that the out-of court statements made by Joe and Hansard that implicated him as the assailant violated his right to confrontation because he had no opportunity to challenge the veracity of these statements.

{¶ 11} "Although we review decisions on the admission of evidence for an abuse of discretion, *State v. Graham* (1979), 58 Ohio St.2d 350, 390 N.E.2d 805, we apply a de novo standard of review to evidentiary questions raised under the Confrontation Clause. See *State v. Babb*, Cuyahoga App. No. 86294, 2006-Ohio-2209, ¶17; *State v. Simuel*, Cuyahoga App. No. 89022, 2008-Ohio-913, ¶35; *State v. Steele*, Cuyahoga App. No. 91571, 2009-Ohio-4704, ¶18.

{¶ 12} The Sixth Amendment to the United States Constitution guarantees that a person accused of committing a crime has the right to confront and cross-examine witnesses testifying against him. *Pointer v.*

*Texas* (1965), 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923. In *Crawford v. Washington* (2004), 541 U.S. 36, 61, 124 S.Ct. 1354, 158 L.Ed.2d 177, the United States Supreme Court held that the proper analysis for determining whether out-of-court statements violate the Confrontation Clause is not whether they are reliable but, rather, whether they are testimonial. The Court went on to state that the Confrontation Clause does not apply to nontestimonial hearsay but that "[w]here testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Id. at 68.[2]

{¶ 13} The *Crawford* court did not provide a comprehensive definition of "testimonial," but it did indicate that the term includes, "at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." Id. The Court further recognized that statements "made under circumstances which would lead an objective witness to reasonably believe that the statements would be available for use at a later trial" are testimonial. Id. at 52.

{¶ 14} "Thereafter, the Court distinguished different statements to law-enforcement officers or agents thereof based upon the purpose of the

---

[2] "If the statement is nontestimonial, it is merely subject to the regular admissibility requirements of the hearsay rules. [*State v. Siler*, 116 Ohio St.3d 39, 2007-Ohio-5637, 876 N.E.2d 534, ¶21]." *Garfield Hts. v. Winbush*, 187 Ohio App.3d 302, 2010-Ohio-1658, 931 N.E.2d 1148, ¶17.

interrogation. 'Specifically, statements are nontestimonial if made during a police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable the police to meet an ongoing emergency.' On the other hand, statements are testimonial if they are made under circumstances objectively indicating that there is no ongoing emergency as the primary purpose of the interrogation is to establish past events relevant to a later criminal case." (Citations omitted.) *Winbush* at ¶18-19.

{¶ 15} In the instant case, Cunningham testified that sometime after the shooting, Joe came to the police station wanting to "clear his name." Cunningham testified that Joe "had information that he related to [Cunningham] through another party that the person who shot our two victims was Perez Worley[,] and Jonathan Hansard was there." Cunningham also testified that Hansard was brought to the station as a person of interest based upon his conversation with Joe. Cunningham testified that the details Hansard provided to him were consistent with information Cunningham already learned regarding what happened at the gas station the night of the shooting.

{¶ 16} The testimony at trial established that Joe came to the station days after the shooting and told Cunningham that Worley was the shooter. Since Cunningham was no longer responding to an ongoing emergency, the

circumstances objectively indicate that the statements obtained were primarily for the purposes of establishing past events relevant to a later prosecution. In addition, Cunningham's testimony regarding Hansard bolstered Joe's statement implicating Worley. However, neither Joe nor Hansard testified at trial and were not subject to cross-examination.

{¶ 17} In *Winbush*, this court found that the admission of police officers' testimony regarding statements of the vehicle's owner that she had loaned the vehicle to defendant violated the defendant's rights under the Confrontation Clause. We found that:

> **"[The vehicle owner's] statements to [the officers], as well as her subsequent written statement, which was admitted into evidence, were clearly testimonial. The testimony at trial established that [the vehicle owner] was contacted approximately two hours after [the officer] abandoned the chase of the fleeing vehicle. Therefore, [the officer] was no longer responding to an ongoing emergency; thus, the circumstances objectively indicate that the statements obtained were primarily for the purposes of establishing past events relevant to a later prosecution."** Id. at ¶20.

{¶ 18} In *State v. Farris*, Cuyahoga App. No. 84795, 2005-Ohio-1749, this court found that the use of an out-of-court statement of a codefendant that implicated the defendant violated the defendant's right to confrontation. We stated:

> **"Here, the detective testified as to what was told to him by [the appellant's] alleged accomplice, Tolbert, during an interview in police custody. Tolbert's statements implicated [the appellant] in a string of burglaries, as well**

**as other criminal activity. Although this hearsay may be used to obtain a search warrant, if properly corroborated, it may not be used in trial unless the declarant is subject to cross-examination. Therefore, the trial court erred when it allowed this testimony." Id. at ¶17.**

{¶ 19} Based on the foregoing, we find that Cunningham's testimony regarding Joe's and Hansard's statements violated the Sixth Amendment's Confrontation Clause and should not have been admitted.

{¶ 20} Accordingly, the first assignment of error is sustained.

{¶ 21} In the second assignment of error, Worley argues that the trial court erred when it denied his motion for a mistrial based on irregularities during jury deliberations.[3] However, based on our disposition of the first assignment of error, the second assignment of error is overruled as moot. See App.R. 12(A)(1)(c).

Accordingly, judgment is reversed and the matter is remanded for a new trial.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to

---

[3]Worley's second assignment of error states: "The trial court erred when it denied [Worley's] motion for a mistrial in light of all the irregularities and jury misconduct during deliberations."

Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, ADMINISTRATIVE JUDGE

MELODY J. STEWART, J., and
MARY J. BOYLE, J., CONCUR