The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Brett Wayne SHARP, Defendant–
Appellant.

No. 04CA0619.

Colorado Court of Appeals,
Div. V.

Dec. 14, 2006.

Rehearing Denied Feb. 22, 2007.

Certiorari Dismissed March 30, 2007.

John W. Suthers, Attorney General, Katharine J. Gillespie, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Thomas K. Carberry, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge ROMÁN.

Defendant, Brett Wayne Sharp, appeals the judgment of conviction entered upon jury verdicts finding him guilty of one count of sexual assault on a child (pattern of abuse), four counts of sexual assault on a child (position of trust), four counts of aggravated incest, four counts of second degree sexual assault, and sentence enhancers of bodily injury to the victim and use of threats, intimidation, or force. We reverse and remand for a new trial.

Defendant was convicted of sexually assaulting his five-year-old daughter, C. The child's mother testified that when C returned from a visit with her father, she reported that her father had touched her inappropriately. The mother called the police, and C was taken to a children's advocacy center, where she underwent a videotaped interview by a private forensic interviewer.

At trial, the prosecution attempted to have C testify, but after it became apparent she was too traumatized to testify, the trial court found her unavailable as a witness. At that time, portions of the videotaped interview were shown to the jury. The jury found defendant guilty on the above counts, and

defendant was sentenced to the Department of Corrections for fifty years.

In 2002, another division of this court affirmed the convictions but vacated the sentence, determining that the trial court had erred in concluding that the former § 16–11–309 (now codified with amendments at § 18–1.3–406, C.R.S.2006) required it to impose consecutive sentences for each conviction of sexual assault on a child. *See People v. Sharp,* (Colo.App. No. 00CA0772, Jan. 10, 2002) (not published pursuant to C.A.R. 35(f) ). The Colorado Supreme Court denied defendant's petition for certiorari on August 19, 2002, and a mandate was issued on August 26, 2002.

At resentencing, the trial court reimposed defendant's fifty-year sentence. Three days later, the United States Supreme Court issued its opinion in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Defendant filed a notice of appeal on March 30, 2004.

We affirmed defendant's conviction in a published opinion on November 3, 2005. *See People v. Sharp,* 143 P.3d 1047 (Colo.App. 2005). In determining whether the child victim's statements were testimonial under *Crawford,* we formulated and applied a test that considered whether an objective person in the child's position would believe her statements would lead to the punishment of the defendant. The supreme court noted with approval our formulation of this objective witness test. *See People v. Vigil,* 127 P.3d 916, 925 (Colo.2006) (adopting a two-part test to determine whether out-of-court statements are made during the functional equivalent of police interrogation).

Both defendant and the People filed petitions for certiorari with the Colorado Supreme Court. On October 10, 2006, the supreme court granted certiorari only "as to whether, under the circumstances of this case, the child's video testimony violates the defendant's Sixth Amendment right to confrontation as set forth in *Davis v. Washington,* [— U.S. ——, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) ] and *People v. Vigil,* 127 P.3d 916 (Colo.2006)" and vacated our judgment affirming defendant's conviction. The

supreme court remanded the case to us for reconsideration in light of *Davis* and *Vigil.*

Upon reconsideration of defendant's appeal, and in light of *Davis* and *Vigil,* we conclude that the child victim's video testimony violated defendant's confrontation rights and that such error constituted plain error. Accordingly, we reverse and remand for a new trial.

### I. Constitutional Confrontation Rights

We note at the outset that by granting defendant's petition for certiorari and directing us to address the merits of his claims, the Colorado Supreme Court has effectively determined that his appeal is timely and obviated the need for further consideration of that issue.

We also recognize defendant raised no Confrontation Clause claim at trial. Where a defendant fails to object at trial, the plain error standard of review applies to allegations of constitutional error. *See People v. Miller,* 113 P.3d 743 (Colo.2005); *People v. Vigil, supra* (applying plain error review because the defendant objected on hearsay, not confrontation, grounds at trial).

Plain error is error that so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Miller, supra,* 113 P.3d at 750. Applying a plain error standard of review in this case, we conclude that plain error occurred.

Defendant contends that the admission of C's videotaped interview at trial violated his constitutional right to confront witnesses and requires reversal of his conviction. We agree.

The United States and Colorado Constitutions guarantee that persons accused of crimes shall have the right to confront the witnesses against them. *See* U.S. Const. amend. VI; Colo. Const. art. II, § 16.

In *Crawford, supra,* the Supreme Court held that a nontestifying witness's out-of-court testimonial statement, regardless of its reliability, may be admitted against an accused only if the witness is unavailable and the accused had an opportunity to cross-

examine the witness when the statement was made. In so holding, the Court departed from its prior confrontation analysis, which had permitted use of an unavailable witness's statement if it bore sufficient indicia of reliability. *See Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

According to the *Crawford* Court, the Confrontation Clause was particularly directed toward prohibiting the use of ex parte examinations as evidence against the accused. *Crawford, supra,* 541 U.S. at 51, 124 S.Ct. at 1363. The Clause applies to "witnesses" against the accused; in other words, those who "bear testimony." *Crawford, supra,* 541 U.S. at 51, 124 S.Ct. at 1364 (quoting 1 N. Webster, *An American Dictionary of the English Language* (1828) ).

"Testimony," in turn, is typically a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford,* 541 U.S. at 51, 124 S.Ct. at 1364 (quoting Webster, *supra* ). The *Crawford* Court declined to give a more precise definition of "testimony." *See Crawford, supra,* 541 U.S. at 68, 124 S.Ct. at 1374.

However, the *Crawford* Court held that, at a minimum, statements are testimonial if the declarant made them at a preliminary hearing, before a grand jury, at a former trial, or during police interrogations. *Crawford, supra,* 541 U.S. at 68, 124 S.Ct. at 1374; *see also Raile v. People,* 148 P.3d 126 (Colo. 2006).

Additionally, the *Crawford* Court identified three "core classes" of statements that may be testimonial: (1) ex parte in-court testimony or its functional equivalent, such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; (2) extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; and (3) statements made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. *Crawford, supra,* 541 U.S. at 51–52, 124 S.Ct. at 1354; *Raile v. People, supra.*

Recently, the Supreme Court clarified that in *Crawford,* it had in mind "interrogations solely directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator." *Davis, supra,* —— U.S. at ——, 126 S.Ct. at 2276. Therefore, "[a]n accuser who makes a formal statement to government officials bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Davis, supra,* —— U.S. at ——, 126 S.Ct. at 2274.

Without attempting to produce an exhaustive list of testimonial statements, the *Davis* court explained:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecutions.

*Davis, supra,* —— U.S. at ——, 126 S.Ct. at 2273–74.

In concluding that certain statements were testimonial, the *Davis* Court considered that (1) the police officers forcibly prevented the defendant from participating in the interrogation of the declarant; (2) the statements deliberately recounted, in response to police interrogation, how potentially criminal past events began and progressed; and (3) the statements were made some time after the events described were over. *Davis, supra,* —— U.S. at ——, 126 S.Ct. at 2278. The Supreme Court concluded that such statements are inherently testimonial because they "are an obvious substitute for live testimony, because they do precisely *what a witness does* on direct examination." *Davis, supra,* —— U.S. at ——, 126 S.Ct. at 2278 (emphasis in original).

Applying *Crawford* to child testimony, our supreme court recognized that "police interrogation" may extend beyond the structured questioning by a law enforcement officer because the "[i]nvolvement of government offi-

cers in the production of testimony with an eye toward trial presents a unique potential for prosecutorial abuse." *Vigil, supra,* 127 P.3d at 922 (quoting *Crawford, supra,* 541 U.S. at 56 n. 7, 124 S.Ct. at 1354).

Therefore, the *Vigil* court adopted a two-part test to determine whether questioning by someone other than a law enforcement officer constitutes the functional equivalent of police interrogation. The test directs courts to examine (1) whether and to what extent government officials were involved in producing the statements; and then (2) whether their purpose was to develop testimony for trial. *Vigil, supra,* 127 P.3d at 922. This determination is fact specific and must be made on a case-by-case basis. *See Vigil, supra,* 127 P.3d at 923.

■ Under the test enunciated in *Vigil,* if statements were made during the functional equivalent of police interrogation, they are testimonial under *Crawford.* If the statements were not the product of the functional equivalent of police interrogation, and thus not clearly testimonial under *Crawford,* they must then be considered under the "core classes" of statements that may be testimonial under *Crawford. See Vigil, supra,* 127 P.3d at 924.

■ Applying the *Vigil* test, we must first determine whether the child's video statements were the product of the functional equivalent of police interrogation, thereby making the statements testimonial. The functional equivalent of the police interrogation test is separate and in addition to the objective witness test. Therefore, if a child makes a statement to a government agent as part of a police interrogation, his or her statement is testimonial irrespective of the child's expectations regarding whether the statement will be available for use at a later trial. *See People v. Vigil, supra,* 127 P.3d at 926 n. 8.

Here, a police detective arranged for C to be taken to a children's advocacy center to be interviewed by a private forensic interviewer. Although C did not indicate that she understood why she was being interviewed or that she was aware of the police detective's presence at the center, the detective testified at trial to observing the interview on a video monitor in the next room. Near the end of the interview, the interviewer excused herself to "see if [she has] to ask [C] any more questions." When she returned, the interviewer asked C specific questions regarding the location and nature of the assaults. While the interviewer was asking C follow-up questions, someone knocked on the door and talked to her. A few minutes later, the interviewer told C that she had "a helper in the next room" and asked C if it was okay to bring in the "helper." C refused to let the "helper" join them, and the interview ended shortly thereafter.

Under these facts, we conclude the child's videotaped statements to the private forensic interviewer were the functional equivalent of police interrogation and were testimonial. The police detective arranged, and, to a certain extent, directed the interview even though the detective was not physically present in the room with C. Moreover, the purpose of the interview was to elicit statements that would be used at a later criminal trial to convict the perpetrator. *See Davis, supra,* —— U.S. at ——, 126 S.Ct. at 2276; *Vigil, supra,* 127 P.3d at 922; *Raile v. People, supra.*

Similar to the testimonial statements made in *Davis,* defendant was not present during the interview; in response to the interviewer's questions, the statements deliberately recounted how potentially criminal past events began and progressed; and the statements were made some time after the events described were over. *See Davis, supra,* —— U.S. at ——, 126 S.Ct. at 2278. Thus, like the *Davis* Court, we conclude that such statements are inherently testimonial because they "are an obvious substitute for live testimony, because they do precisely what a witness does on direct examination." *See Davis, supra,* —— U.S. at ——, 126 S.Ct. at 2278.

Unlike the physician conducting the sexual assault exam in *Vigil,* the primary purpose of C's interview was to identify the perpetrator and to develop testimony for trial, not to identify and treat potential sexual abuse injuries. *See Vigil, supra,* 127 P.3d at 922–23. This conclusion is consistent with the holding

in *State v. Mack*, 337 Or. 586, 101 P.3d 349 (2004), in which the Oregon Supreme Court found that a social worker conducting a videotaped interview of a three-year-old victim acted as an agent of the police. Notably, our supreme court agreed with the analysis and outcome of that case. *See Vigil, supra,* 127 P.3d at 922–23 ("An application of *Crawford's* concerns regarding the extent of government involvement and the purpose of the questioning yields only one result—the social worker functioned as an agent of the police."). Additionally, although the *Vigil* court held that the admission of the child's videotaped interview did not rise to the level of plain error, it did not suggest or imply that the statements were anything other than testimonial, as this court had concluded.

■ Because we conclude. that the statements were made during the functional equivalent of police interrogation and were testimonial in nature, we must next consider whether admitting them constituted plain error.

Because C was unavailable, the prosecutor admitted C's videotaped statements in lieu of her testimony. It is undisputed that defendant did not have an opportunity to cross-examine C either during the videotaped interview or during trial. Moreover, the vast majority of evidence admitted at trial was testimonial in nature and no physical evidence of abuse was admitted. Further, the prosecutor referred to the videotaped interview extensively throughout closing argument and encouraged the jurors to refer to it while deliberating. Based on this evidence, we conclude that admitting the videotaped statements so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *See Miller, supra.*

Accordingly, we conclude defendant's constitutional confrontation rights were violated by introduction of C's videotaped statements at trial. Thus, we reverse defendant's conviction and remand for a new trial.

## II.  Jurisdiction and Right to Trial by Jury

■ Because it may occur on remand, we consider defendant's contention that the trial court lacked jurisdiction and violated his right to trial before a jury drawn from the district where the crimes occurred. Defendant specifically argues that the information alleged the crimes occurred in Arapahoe County, whereas the evidence showed a majority of the crimes occurred in the City and County of Denver. We disagree.

In Colorado, a person is subject to prosecution in any Colorado district court if he commits an offense either wholly or partly within the state. *See* § 18–1–201, C.R.S. 2006; *People v. Brown,* 70 P.3d 489 (Colo. App.2002).

■ Moreover, an information is sufficient if it can be understood from it that "the offense was committed within the jurisdiction of the court or is triable therein." Section 16–5–202(1)(c), C.R.S.2006; *see People v. Williams,* 984 P.2d 56, 60 (Colo.1999). This requirement serves two vital interests of constitutional dimension: (1) it provides the defendant with notice of the offense charged, as well as the factual circumstances surrounding the offense, so that the defendant can adequately prepare a defense; and (2) it protects the defendant from further prosecution for the same offense. *Brown, supra.*

Here, the information alleged, and evidence at trial demonstrated, that defendant committed criminal acts in Arapahoe County and the City and County of Denver. Because defendant allegedly committed the offenses wholly or partly within the state, he was subject to jurisdiction in any Colorado district court. *See People v. Brown, supra.*

Furthermore, Colorado's criminal venue statute, § 18–1–202(11), C.R.S.2006, provides:

Proof of the county in which the offense occurred or which county is the proper place for trial pursuant to this section shall not constitute an element of any offense and need not be proven by the prosecution at trial unless required by the statute defining the offense. Any challenge to the place of trial pursuant to this section shall be made by motion in writing no later than twenty days after arraignment, except for good cause shown.... Failure to challenge the place of trial as provided in this sub-

section (11) shall constitute a waiver of any objection to the place of trial.

Thus, defendant could have moved for change of venue within twenty days after his arraignment, but he did not do so.

Because we conclude the trial court had jurisdiction, we further conclude the information was sufficient, despite any factual error regarding venue. It gave defendant notice of factual circumstances surrounding the charges and alleged the crimes occurred within the State of Colorado. *See Brown, supra.*

Accordingly, we conclude that the trial court had jurisdiction and that defendant waived any objection to venue.

The judgment is reversed and the case is remanded for a new trial.

Judge VOGT and Judge GRAHAM concur.