IN THE COURT OF CRIMINAL APPEALS

OF TEXAS






NO. PD-0447-06





RODOLFO RANGEL, Appellant



v.



THE STATE OF TEXAS





ON DISCRETIONARY REVIEW


FROM THE SECOND COURT OF APPEALS


WICHITA COUNTY





 Cochran, J., filed an opinion dissenting to the dismissal of the petitions for
discretionary review, in which Johnson, J., joined.


O P I N I O N 



 I respectfully dissent to the Court's action in dismissing the State Prosecuting
Attorney's (SPA) and Appellant's petitions for discretionary review. Appellant raises
important questions under the Sixth Amendment concerning the constitutionality of the child-videotape statute (1) in the post-Crawford (2) world. Other courts have cited Rangel, both
favorably and unfavorably, on this critical and recurring issue. (3) Trial and appellate courts
across the country are attempting to find a suitable accommodation between the defendant's
constitutional right of confrontation and a young child's inability to testify fully and
accurately in the courtroom setting. We should not shirk our duty in resolving appellant's
constitutional question and in providing guidance to the Texas bench and bar. 

 Appellant was convicted of various counts of aggravated sexual assault, indecency
with a child, and attempted indecency with a child, involving his own or his wife's children. 
Appellant's daughter, C.R., was six years old at the time of trial and was one of the three
children he was found to have molested. Before trial, the State moved to admit an out-of-court forensic videotape of her statements taken under Article 38.071 in lieu of her live, in-court testimony. The appellant objected that using the videotape instead of live testimony
violated both his right to confrontation and cross-examination. The trial court admitted the
videotape, and C.R. did not testify. The court of appeals concluded that the forensic
videotape was "testimonial" under Crawford, but that appellant's confrontation rights were
not violated because he could have submitted written questions for C.R. to answer during
another out-of-court videotape session. (4) 

 We granted both appellant's and the SPA's petitions for discretionary review to decide
whether the provisions of Article 38.071 allowing the admission of an out-of-court, ex parte
videotaped statement by a child victim in lieu of that child's courtroom testimony violate a
defendant's right of confrontation. (5)

 I would hold that the child-videotape statute, Article 38.071, cannot be construed to
allow the admission of out-of-court testimonial hearsay statements unless the child testifies
at trial or the defendant has had a prior opportunity to cross-examine that child. To the extent
that the statute cannot accommodate the demands of the Confrontation Clause as explained
in Crawford and Davis, it violates appellant's Sixth Amendment rights. 

I.


 Debbie Adams, a Child Protective Services (CPS) investigator, began investigating 
appellant and his wife, Rosa, for possible child abuse in January of 2003. A week later, CPS
removed the four children from appellant's home after one of them, G.T., told Ms. Adams
that appellant has sexually abused her. The children were placed in foster care and received
extensive counseling. Local law-enforcement officials were also notified, and Detective
Julie Elliot began a criminal investigation into the alleged sexual abuse. 

 C.R. was appellant's biological daughter; she was four years old at the time she was
placed in foster care. Cheryl Polly, a licensed professional counselor, was C.R.'s therapist. 
She testified that C.R. exhibited behaviors and symptoms consistent with being the victim
of sexual abuse: She experienced nightmares, bed-wetting, sexual acting out, and defiance. 
 According to Ms. Polly, C.R. said that appellant had inserted his finger into her genitals. By
the time of trial, C.R.'s symptoms had largely subsided, but she tended to "dissociate" or
"zone out" when she was asked about appellant's abuse. 

 Two months after the children had been removed from their parents' home, Camille
Cleveland, a CPS investigator, conducted a videotaped "forensic interview" of C.R. at
"Patsy's House," the Wichita Children's Advocacy Center. Ms. Cleveland explained that
"it's a safe environment. Alleged perpetrators or someone that has been accused of abusing
a child. . . are not allowed. . . . There's also a few Child Protective Service workers housed
there as well as some law enforcement officers so we can work the cases jointly." Ms.
Cleveland conducted the videotaped interview on March 26, 2003. Detective Julie Elliott
watched the interview.

 Before trial, the State moved to admit the March 26th videotape instead of calling C.R.
as a witness. Appellant objected. Therefore, the trial judge conducted a pretrial hearing to
determine whether C.R. was an "unavailable" child witness and if the videotaped interview
could be used in lieu of her in-court testimony under Article 38.071. (6) At that hearing, Ms.
Polly explained that "testifying live in the courtroom would be extremely traumatic" for C.R. 
In her opinion, testimony via closed circuit TV would be less traumatic, but she still did not
think that C.R. "would be able to do it because there would still be strangers involved in
that." The trial judge expressed his concern at attempting "to balance both sides of the
potential right-harm to the child as well as the defendant's right to confrontation." 
Appellant's counsel objected to the proposal as violating both his confrontation and cross-examination rights:

 Well, Judge, not only are we dealing with a confrontation issue here, we're
dealing with a cross-examination issue here. If the-if the State is allowed to
introduce the videotape of [C.R.] and in connection with that there's a finding
that she's unavailable, that essentially- that essentially puts me in this position. 
Camille Cleveland, a worker for CPS, who is clearly aligned with the State-
you know, they may-they may take a position differently, but CPS is clearly
aligned with the State in the prosecution of this case. Was allowed to
interview in an environment subject only to the control of CPS, this one
witness, present questions to this witness, receive the responses from that
witness, and that is going to be the sum total testimony from this witness.


Counsel elaborated further: The procedure was unfair because CPS "had their chance, but
I don't get mine. That's not fair to my client. And so what the State is proffering is saying,
Judge, let us make our opportunity to get this five-year-old to tell the court and jury what we
want to, but we won't give the opportunity to the defendant to in any meaningful way to
rebut that." 

 The trial judge expressed his concern that appellant's attorney would "grill" C.R. and
told him, 

 [Y]ou have a very deep voice. You come across very strongly. I mean I think
taking all of that into consideration and the fact that-what I would primarily
see I think is the fact that the doctor is going to testify that there were some
very objective signs of abuse is what's been represented to me and
that-I'm-I'm just not willing to put a four- or five-year-old kid through that
right now based upon what I know. So I'm going to grant the State's motion.


The trial judge did state that he might reconsider his ruling during trial, once he had seen the
videotape, "if it looks like she has been really guided by her nose down a path that she as a
four- or five-year-old child would not go." Thus, during trial, appellant's attorney also
objected to the admission of the videotape as not having been conducted by "a neutral
individual in a detached manner." (7) That objection was also overruled. The jury convicted
appellant of most, but not all, of the charges, and the trial court sentenced him to fifty years'
imprisonment on the aggravated sexual assault count involving C.R. (8)

 On appeal, appellant claimed, inter alia, that Article 38.071 "is unconstitutional as
applied to him because it denies him his Sixth Amendment right to confrontation." (9) As the
court of appeals said, "Appellant claims that C.R.'s videotaped interview is testimonial
hearsay, and that regardless of whether she was unavailable, he did not have a prior
opportunity to cross-examine her, so the interview is inadmissible." (10) The court of appeals
agreed that C.R.'s videotaped statement was "testimonial" under Crawford and Davis, (11) and
that Article 38.071 "clearly contemplates that a child's statement admitted under [that article]
will function as testimony in a criminal case." (12) However, the court of appeals then held that 
Article 38.071 "provides an effective alternative to the traditional face-to-face confrontation
at trial" because it permits a defendant to submit written questions to the same person who
had originally interviewed the child and those questions could, with the approval of the trial
court, be posed to the child during a second videotaped interview. (13) 

 Thus, the primary question before this Court is whether written interrogatories are a
suitable substitute for face-to-face confrontation and cross-examination in a criminal trial. 
The answer is obvious to me: No. The submission of written interrogatories is no substitute
for in-court, sworn testimony, subject to the Sixth Amendment's requirements of
confrontation and cross-examination. 

II.


 But before this Court could address appellant's contention that the court of appeals
erred by equating Article 38.071's interrogatory procedure with the type of confrontation and
cross-examination that the Sixth Amendment requires, it should address the SPA's cross-petition which claims that the court of appeals erred in holding that C.R.'s videotaped
statement was "testimonial" under Crawford. If C.R.'s statements were not "testimonial,"
then the Sixth Amendment has no applicability and the videotape, taken in accordance with
Article 38.071, is admissible under the statutory scheme as an exception to the hearsay rule.

A. C.R.'s Videotaped Interview Was a Testimonial Statement.

 The SPA argues that C.R.'s videotaped interview is not a testimonial statement
because there is no evidence that C.R. herself viewed the answers as "testimony." The SPA 
posits that "a statement made by a child to a government employee is testimonial only if
made under circumstances that would cause a reasonable person of the same level of maturity
or intellectual functioning as the child to believe the statement will be used against the
defendant in a criminal prosecution." 

 After Crawford, but before Davis, this was an entirely defensible position because the
Supreme Court implied in Crawford that one should look at the expectations of the declarant
in determining whether he intended to make (or knew that he was making) a statement that
might be used as evidence in a future criminal proceeding. (14) A few other state courts, in
post-Crawford, pre-Davis cases, had taken this approach with respect to statements of young
children. (15) For example, the SPA cites People v. Sharp, (16) a Colorado child-abuse prosecution
in which the child was interviewed on videotape by a forensic interviewer outside the
presence of the police. The Colorado court of appeals stated that the "inquiry is whether,
under the circumstances, the declarant intended to bear testimony against the accused. The
determinative factor in this inquiry is the declarant's awareness or expectation that his or her
statement may later be used at trial." (17) Under that test, the child's statements to the social
worker were not testimonial. (18) However, the Colorado Supreme Court vacated and remanded
Sharp after the United States Supreme Court changed the focus of the inquiry in Davis v.
Washington. (19) 

 Under Davis, the primary focus in determining whether an out-of-court statement is
"testimonial" is upon the objective purpose of the interview or interrogation, not upon the
declarant's expectations. (20) Thus, on remand, the Colorado court of appeals reversed Sharp's
conviction and remanded for a new trial because the objective purpose of the five-year-old
child's videotaped statement to a private forensic interviewer at a children's advocacy center
was to elicit statements from her to be used to prosecute the defendant in a later criminal
proceeding. (21) The court concluded that "such statements are inherently testimonial because
they 'are an obvious substitute for live testimony, because they do precisely what a witness
does on direct examination.'" (22) 

 Even before Davis, many courts had, like the Fort Worth Court of Appeals in the
present case, followed the reasoning of State v. Snowden, (23) which had held that a statement
is testimonial if it was "made or elicited" for the primary purpose of being used in a future
criminal proceeding. (24) In Snowden, a child-abuse prosecution involving the use of a
videotaped statement made to a social worker at a juvenile center, the appellate court stated, 

 [I]f a statement is made under such circumstances that would lead an objective
person to believe that statements made in response to government interrogation
later would be used at trial, the admission of those statements must be
conditioned upon Crawford's requirements of unavailability and a prior
opportunity to cross-examine. (25) 


Virtually all courts that have reviewed the admissibility of forensic child interview statements
or videotapes after the Davis decision have found them to be "testimonial" and inadmissible
unless the child testifies at trial or is presently unavailable but the defendant has had a prior
opportunity for cross-examination. (26) Thus, the SPA's argument, though a cogent one, (27) does not stand up in a post-Davis
world. Thus, I would agree that the court of appeals correctly determined that C.R.'s
videotaped statements were "testimonial." 

B. The Submission of Written Interrogatories Are Not a Substitute for In-Court
Confrontation and Cross-Examination.


 After holding that C.R.'s videotaped statement was testimonial and therefore
inadmissible unless she testified at trial (or appellant had had a prior opportunity to cross-examine her), the court of appeals concluded that the submission of written interrogatories
provide "an effective alternative to the traditional face-to-face confrontation at trial." (28) If this
is so, virtually every defendant could happily videotape his unsworn pretrial statement and
then agree to answer the State's written interrogatories in another ex parte videotape in lieu
of testifying in court and submitting himself to cross-examination. (29) Such a procedure does
not inspire confidence, and it is no substitute for in-court cross-examination. 

 In Crawford itself, the Supreme Court explained that the Confrontation Clause was
based on the English common law tradition of "live testimony in court subject to adversarial
testing." (30) The Court noted that this tradition was in contrast to the European civil law that
"condone[d] examination in private by judicial officers." (31) The Supreme Court also noted 
that depositions or other prior testimony could be admitted against an accused only if he was
present and had an opportunity to cross-examine the witness during that deposition or prior
testimony. (32) The Court explained that a "prior opportunity to cross-examine" was both a
"necessary" and "dispositive" requirement to the admission of testimonial statements. (33) And,
in ringing terms, the Supreme Court declared that "under no circumstances" shall the
defendant be deprived of "seeing the witness face to face and . . . subjecting him to the ordeal
of a cross-examination." (34) Finally, the Court explained that the Confrontation Clause
provides a procedural guarantee: "It commands, not that evidence be reliable, but that
reliability be assessed in a particular manner: by testing in the crucible of cross-examination." (35) 

 After Crawford, there is no room for arguing that written interrogatories are an
acceptable substitute for live cross-examination. In light of Crawford, the Colorado Supreme
Court held that its preliminary hearings, which are usually restricted to an assessment of
probable cause and limit the defendant's right of cross-examination, do "not provide an
adequate opportunity to cross-examine sufficient to satisfy the Confrontation Clause
requirements." (36) More recently, the Florida Supreme Court held that discovery depositions,
during which the defendant need not be present, "do not function as the equivalent of the
cross-examination opportunity envisioned by Crawford." (37)

 The SPA relies heavily upon Maryland v. Craig (38) for the proposition that "the right
to confrontation does not guarantee the gold standard in every case." Possibly not, but Craig
certainly did require that the child testify under oath, be subject to "full cross-examination,
and be observed by the judge, jury, and defendant during that testimony." (39) And after
Crawford and Davis, confrontation and the opportunity for cross-examination are not merely
"the gold standard," they are categorical imperatives. There is no substitute.

 I therefore respectfully dissent to the Court's decision to dismiss this case as
"improvidently granted." We should address appellant's properly preserved and presented
constitutional claim. 


Filed: February 13, 2008

Publish
1. Tex. Code Crim. Proc. art. 38.071.
2. Crawford v. Washington, 541 U.S. 36 (2004); see also Davis v. Washington, 547 U.S.
813 (2006).
3. See Morales v. State, 222 S.W.3d 134, 145 (Tex. App.-Corpus Christi 2006, no pet.)
(holding that where the trial court admitted the original "testimonial statement" videotape and
two follow-up videotapes-in which the original interviewer asked unavailable child complainant
interrogatory questions that had been submitted by defense counsel-under article 38.071, the
follow-up out-of-court videotapes were a suitable substitute for actual cross-examination;
concurrence cited Rangel as authority); Wells v. State, No. 11-05-00335-CR, ___ S.W.3d ___,
2007 Tex. App. LEXIS 8413, *9 (Tex. App.-Eastland Oct. 25, 2007, n.p.h.) (noting Rangel as
among conflicting authorities); Lollis v. State, 232 S.W.3d 803, 809 (Tex. App.-Texarkana 2007,
no pet.) (citing Rangel for the proposition that out-of-court statements by young children to
investigators may be "testimonial" under Crawford); Martinez v. State, 236 S.W.3d 361, 371
(Tex. App.-Fort Worth 2007, pet. dism'd) (citing Rangel for the proposition that the child's
hearsay statements were "testimonial" because "they were made two months after the
emergency"); Ficarro v. State, No. 13-03-00439-CR, 2007 Tex. App. LEXIS 3166 (Tex.
App.-Corpus Christi Apr. 26, 2007, pet. dism'd) (not designated for publication) (citing Rangel
for the proposition that, under Art. 38.071, "the right to confrontation is not violated if the
defendant is given the opportunity to submit written interrogatories to an unavailable witness.");
Hernandez v. State, 946 So.2d 1270, 1284-85 (Fla. App. 2007) (citing Rangel and other
authorities for the proposition that a child's out-of-court statements to investigators gathering
evidence for possible prosecution are "testimonial" under Crawford); State v. Bentley, 739
N.W.2d 296, 300 (Iowa 2007) (citing Rangel and holding that child's out-of-court videotaped
statements to police were testimonial and thus inadmissible under the Confrontation Clause);
State v. Henderson, 160 P.3d 776, 785, 792 (Kansas 2007) (citing Rangel and holding that
videotaped interview of child made by social worker was "testimonial" and violated
Confrontation Clause because child did not testify at trial); State v. Siler, 876 N.E.2d 534, 543
(Ohio 2007) (citing Rangel and holding that admission of child's hearsay statements violated
Davis).
4. Rangel v. State, 199 S.W.3d 523, 537 (Tex. App.-Fort Worth 2006) ("Having
determined that C.R.'s statements were testimonial, C.R. was unavailable, and appellant had an
opportunity to cross-examine C.R. through written interrogatories, we hold that appellant was not
denied his Sixth Amendment right to confrontation.").
5. Appellant's ground for review asks:

 Whether appellant's Sixth Amendment rights were violated when the unavailable
complainant's testimonial hearsay statements were admitted into evidence
pursuant to statutory authority[?]


 The S.P.A.'s ground for review asks:

 Did the court of appeals apply the correct analysis to determine that the statement
of a four-year-old child was testimonial under Crawford v. Washington?
6. As the proponent of the videotape, the State had the burden to demonstrate its
admissibility. Tex. R. Evid. 104(a). See Alvarado v. State, 912 S.W.2d 199, 215 (Tex. Crim.
App. 1995). To the extent that the State failed to show the circumstances surrounding the
videotaping to establish that it was a non-testimonial interview, it has failed in its burden of
proof.
7. See Tex. Code Crim. Proc. Art. 38.071, § 2(a) ("The recording of an oral statement of
the child made before the indictment is returned or the complaint has been filed is admissible
into evidence if the court makes a determination that the factual issues of identity or actual
occurrence were fully and fairly inquired into in a detached manner by a neutral individual
experienced in child abuse cases that seeks to find the truth of the matter.").
8. Appellant was also sentenced to fifty years' imprisonment on a separate aggravated
sexual assault count, as well as twenty years' and ten years' imprisonment on other counts, none
of which are at issue in the appeal before us.
9. Rangel, 199 S.W.3d at 532.
10. Id.
11. Id. at 534-35 (stating that the videotaped interview was a "structured, formalized
questioning of C.R. by the [CPS] investigator" and is was "more akin to the types of ex parte
examination discussed and condemned in Crawford than a 'casual remark to an acquaintance' or
even to initial statements made to a police officer responding to a call," and noting that C.R. was
describing past events, not facing an emergency).
12. Id. at 535. 
13. Id. at 536-37; see Tex. Code Crim. Proc. art. 38.071, § 2(b). This section provides as
follows:

 If a recording is made under Subsection (a) of this section and after an indictment
is returned or a complaint has been filed, by motion of the attorney representing
the state or the attorney representing the defendant and on the approval of the
court, both attorneys may propound written interrogatories that shall be presented
by the same neutral individual who made the initial inquiries, if possible, and
recorded under the same or similar circumstances of the original recording with
the time and date of the inquiry clearly indicated in the recording.
14. See, e.g., Wall v. State, 184 S.W.3d 730, 742-43 (Tex. Crim. App. 2006) (stating that
"whether a statement is testimonial under Crawford is determined by the standard of an
objectively reasonable declarant standing in the shoes of the actual declarant") (citing Crawford,
541 U.S. at 52, which set out one definition of "testimonial" statements as those "'statements that
were made under circumstances which would lead an objective witness reasonably to believe that
the statement would be available for use at a later trial,'" and United States v. Cromer, 389 F.3d
662, 675 (6th Cir. 2004) (stating that the decisive inquiry under a Confrontation Clause objection
to hearsay is "whether a reasonable person in the declarant's position would anticipate his
statement being used against the accused in investigating and prosecuting the crime")).
15. See, e.g., People v. Vigil, 127 P.3d 916, 924 (Colo. 2006) (holding, in child abuse
prosecution, that child's statements to his doctor during medical exam were not testimonial;
stating that, "[b]ased on our reading of Crawford and our review of other courts deciding this
issue, we hold that the 'objective witness' language in Crawford refers to an objectively
reasonable person in the declarant's position. Applying this test to the instant case, we determine
that an objectively reasonable person in the declarant's position would not have believed that his
statements to the doctor would be available for use at a later trial.").
16. 143 P.3d 1047 (Colo. Ct. App. 2005).
17. Id. at 1051.
18. Id. at 1053.
19. People v. Sharp, No. 06SC18, 2006 Colo. LEXIS 826 (Colo. Oct. 10, 2006) (not
designated for publication).
20. Davis v. Washington, 547 U.S. at ___, 126 S.Ct. at 2273-74. The Supreme Court
explained:

 Statements are nontestimonial when made in the course of police interrogation
under circumstances objectively indicating that the primary purpose of the
interrogation is to enable police assistance to meet an ongoing emergency. They
are testimonial when the circumstances objectively indicate that there is no such
ongoing emergency, and that the primary purpose of the interrogation is to
establish or prove past events potentially relevant to later criminal prosecution.

Id. See Tom Lininger, Reconceptualizing Confrontation after Davis, 85 Tex. L. Rev. 271, 280
(2006) ("The Davis. . . reasoning represents a conspicuous departure from the Crawford ruling.
The Crawford Court had focused on the mindset of the declarant: Did she give her statement
under circumstances in which she could foresee the later prosecutorial use of her words? The
Davis opinion shifted the focus from the declarant's state of mind to the officers' purpose in
questioning the declarant.") (footnote omitted). As explained by one appellate court in the
context of holding that a forensic interview of a small child by a social worker investigating child
abuse was "testimonial" under the new Davis standard, the test is not how the person questioned views the interrogation, but what the
purpose of the statement was as determined by an objective view of the
circumstances. It makes more sense to ask whether an objective person, looking at
the circumstances of the questioning, would consider the purpose of the
statements as aiding the investigation. Was it a statement taken to address an
immediate situation and see what is going on, like a mother's questioning of her
child in this case and like the 911 emergency call in Davis, or was it a step taken
in a police investigation after the action is over for purposes of aiding the
investigation and potential prosecution, like Amy Hammon's statements to police
in Hammon, and like [child victim's] statements to [social worker] during the 
interview?

In the Interest of S.R., 920 A.2d 1262, 1267 (Pa. Super. Ct. 2007).
21. People v. Sharp, 155 P.3d 577, 581 (Colo. Ct. App. 2006).
22. Id. (quoting Davis, 547 U.S. at ___, 126 S. Ct. at 2278).
23. 867 A.2d 314 (Md. 2005).
24. Id. at 324.
25. Id. at 330. See also United States v. Bordeaux, 400 F.3d 548 (8th Cir. 2005) (reversal
where statement was made to "forensic interviewer" and child testified by closed circuit
television); People v. Sisavath, 13 Cal. Rptr. 3d 753 (Cal. Ct. App. 2004) (child victim
videotaped statement to forensic specialist inadmissible).
26. See, e.g., State v. Hooper, No. 33826, __ P.3d ___, 2007 Ida. LEXIS 234 (Idaho
December 24, 2007) (holding that videotaped statements the child victim made to nurse during
interview at a sexual-trauma abuse-response center were testimonial because the circumstances
surrounding the interview indicated that the primary purpose of the interview was to establish
past events potentially relevant to later criminal prosecution as opposed to meeting the child's
medical needs); State v. Henderson, 160 P.3d 776 (Kan. 2007) (reversible error to admit three-year-old child's videotaped statement to social worker taken at government facility to gather
evidence against alleged perpetrator when child did not testify at trial); State v. Justus, 205
S.W.3d 872 (Mo. 2006) (while social worker's job was to protect child, "primary purpose" of
videotaped statements was to establish past events); State v. Blue, 717 N.W.2d 558 (N.D. 2006)
(videotaped statement to forensic interviewer at child advocacy center inadmissible); State v.
Pitt, 147 P.3d 940 (Ore. Ct. App. 2006) (reversible error to admit "testimonial" videotaped
statements made by two children to social worker at child abuse assessment center when children
did not testify at trial); In the Interest of S.R., 920 A.2d 1262 (Sup. Penn. 2007) (reversible error
to admit videotape of child victim's statement to forensic DHS interviewer for the purpose of
investigation and possible prosecution when child did not testify at juvenile's adjudication
hearing).
27. In Henderson, the Kansas Supreme Court explicitly rejected the same argument as that
made by the SPA in the present case:

 The amicus American Prosecutors Research Institute urges us to adopt an age-equivalent standard when determining whether a child's statement is testimonial.
In support, it cites six studies evaluating what children understand about court and
court-related concepts. Like the Court of Appeals, we expressly reject its specific
argument that the videotaped interview was not testimonial solely because a 3-year-old child would have no reasonable expectation her statements will later be
used at trial. We observe that its argument heavily relies upon the language from
Crawford, 541 U.S. at 51-52, that describes testimonial statements as those "made
under circumstances which would lead an objective witness reasonably to believe
that the statement would be available for use at a later trial." Indeed, the case
upon which it principally relies, State v. Bobadilla, 709 N.W.2d 243 (Minn.
2006), was decided before Davis. We also observe that under the Institute's
argument, the prosecution is allowed to have its cake and eat it too: The victim is
too young to be competent to testify, as the district court found with 3-year-old
F.J.I., but not too young to have her statement placed in evidence by the State with
no attendant defense right to confront and cross-examine.

160 P.3d at 785. See generally, Myrna S. Raeder, Comments on Child Abuse Litigation in a
"Testimonial" World: The Intersection of Competency, Hearsay, and Confrontation, 82 Ind. L.J.
1009, 1023 (2007) (discussing the use of forensic interviews in child-abuse cases; stating that
"Crawford appears to doom the use of multidisciplinary teams in child abuse as a way of
introducing statements of children who do not testify" and lamenting that "Crawford has turned
these best practices into a textbook for creating testimonial statements when the child does not
testify."); Robert P. Mosteller, Testing the Testimonial Concept and Exceptions to
Confrontation: "A Little Child Shall Lead Them," 82 Ind. L.J. 917, 957 (2007) (collecting post-Davis cases, using Snowden as the "archetype" situation, and stating, "Statements secured from
children for the explicit purpose of admission in court through a hearsay exception have been
uniformly treated as testimonial.").
28. 199 S.W.3d at 536.
29. Justice Scalia, in his stinging dissent to Maryland v. Craig, 497 U.S. 836 (1990),
upholding the use of a two-way closed-circuit television in taking the testimony of a traumatized
child victim, made precisely this point:

 The Court's test today requires unavailability only in the sense that the child is
unable to testify in the presence of the defendant. That cannot possibly be the
relevant sense. If unconfronted testimony is admissible hearsay when the witness
is unable to confront the defendant, then presumably there are other categories of
admissible hearsay consisting of unsworn testimony when the witness is unable to
risk perjury, un-cross-examined testimony when the witness is unable to undergo
hostile questioning, etc. California v. Green, 399 U.S. 149, 26 L. Ed. 2d 489, 90
S. Ct. 1930 (1970), is not precedent for such a silly system.

Id. at 866 (Scalia, J., dissenting).
30. 541 U.S. at 43.
31. Id.
32. Id. at 49.
33. Id. at 55-56.
34. Id. at 57 (quoting Mattox v. United States, 156 U.S. 237, 244 (1895)).
35. Id. at 61. In Davis v. Alaska, 415 U.S. 308 (1974), the Supreme Court explained that
the accused's right to be confronted with the witnesses against him is more than being allowed to
confront the witnesses physically. The primary interest secured by confrontation is the right of
cross-examination. The Supreme Court stated, 

 Cross-examination is the principal means by which the believability of a witness
and the truth of his testimony are tested. Subject always to the broad discretion of
a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness'
perceptions and memory, but the cross-examiner has traditionally been allowed to
impeach, i.e., discredit, the witness. . . . [T]he exposure of a witness' motivation
in testifying is a proper and important function of the constitutionally protected
right of cross-examination.

Id. at 316. Thus, the prior opportunity to cross-examine required by Crawford must serve that
same function.
36. People v. Fry, 92 P.3d 970, 978 (Colo. 2004).
37. State v. Lopez, No. SC05-88, ___ So.2d ___, 2008 Fla. LEXIS 1 at *20 (Fla. Jan.10,
2008).
38. 497 U.S. 836 (1990). In Craig, a closely divided, 5-4 Supreme Court held:

 where necessary to protect a child witness from trauma that would be caused by
testifying in the physical presence of the defendant, at least where such trauma
would impair the child's ability to communicate, the Confrontation Clause does
not prohibit use of a procedure that, despite the absence of face-to-face
confrontation, ensures the reliability of the evidence by subjecting it to rigorous
adversarial testing and thereby preserves the essence of effective confrontation.
Because there is no dispute that the child witnesses in this case testified under
oath, were subject to full cross-examination, and were able to be observed by the
judge, jury, and defendant as they testified, we conclude that, to the extent that a
proper finding of necessity has been made, the admission of such testimony would
be consonant with the Confrontation Clause.

Id. at 857. Only one of the Supreme Court justices who joined the majority in Craig is still on
the court. Justice Scalia, who wrote the opinions in both Crawford and Davis, wrote a bitter
dissent in Craig which began as follows:

 Seldom has this Court failed so conspicuously to sustain a categorical guarantee
of the Constitution against the tide of prevailing current opinion. The Sixth
Amendment provides, with unmistakable clarity, that "in all criminal
prosecutions, the accused shall enjoy the right . . . to be confronted with the
witnesses against him." The purpose of enshrining this protection in the
Constitution was to assure that none of the many policy interests from time to
time pursued by statutory law could overcome a defendant's right to face his or
her accusers in court. 

Id. at 860. 
39. Id.