**CITY OF COLUMBUS, Appellee,**

v.

**OBASOHAN, Appellant.**

[Cite as *Columbus v. Obasohan,* 175 Ohio App.3d 391, 2008-Ohio-797.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 07AP–297.

Decided Feb. 28, 2008.

392

Rick C. Pfeiffer Jr., Columbus City Attorney, Lara N. Baker, Columbus City Prosecutor, and Melanie R. Tobias, Assistant City Prosecutor, for appellee.

Tyack, Blackmore & Liston Co., L.P.A., James P. Tyack, and Siobhan R. Boyd, for appellant.

WHITESIDE, Judge.

{¶ 1} Defendant-appellant, Sandra Obasohan, appeals from the judgment of the Franklin County Municipal Court finding her guilty of one count of resisting arrest. For the following reasons, we reverse the judgment of the trial court and remand for a new trial.

{¶ 2} Plaintiff-appellee, the city of Columbus, charged appellant with one count of disorderly conduct, a fourth-degree misdemeanor, in violation of Columbus City Codes ("C.C.") 2317.11(A)(3). Specifically, appellee alleged that appellant had "recklessly cause[d] inconvenience, annoyance, alarm to another, to wit: Kimberly Richardson and Demetrius Richardson, by insulting/taunting/threatening, under circumstances [in] which * * * such conduct is likely to provoke a violent response, to wit: screaming and cursing [at] [the Richardsons] after having been warned by [Police Officer] J. Brandt and [Police Officer] Clark." Appellee also charged appellant with one count of resisting arrest, a second-degree misdemeanor, in violation of C.C. 2321.33(A). In particular, appellee alleged that appellant "recklessly/by force, resist[ed] the lawful arrest of herself * * * in the following manner, to wit: jerking arms away from [O]fficer [Clark] and pulling away from [O]fficer [Clark] while screaming 'don't you put your hands on me.'" Appellant pleaded not guilty to both charges, and the case proceeded to a jury trial.

{¶ 3} At trial, Demetrius Richardson testified on behalf of appellee as follows. At approximately 11 p.m. on January 23, 2006, Demetrius was involved in an automobile accident with a vehicle driven by appellant's brother. Shortly thereafter, appellant and her parents arrived at the scene. Appellant and her father were irate about the accident; appellant, in particular, directed verbal threats and profanity at Demetrius. As appellant and her father became increasingly upset, Demetrius felt "very threatened and fearful"; accordingly, he made an effort to keep a safe distance from them.

{¶ 4} Columbus Police Officers Brandt, Love, and Clark arrived at the scene; Demetrius reported that appellant and her father had threatened him. Appellant, still angry and upset, was uncooperative and disrespectful toward the officers. Officer Clark repeatedly admonished her to calm down. After appellant refused to comply and used profanity toward him, Officer Clark informed her that he was placing her under arrest for disorderly conduct. After appellant "pulled away" from Officer Clark, he forced her to the ground and restrained her.

{¶ 5} Demetrius's mother, Kimberly Richardson, also testified on appellee's behalf as follows. Shortly after the collision, Demetrius telephoned Kimberly to report the accident. She overhead appellant's father threatening Demetrius; accordingly, she resolved to come to the accident scene. Upon arrival, she

approached appellant's father to inquire about his son, who had been injured in the accident. Appellant, standing nearby, became upset and began conversing with her father in a loud, disrespectful manner. Although appellant spoke in a language unfamiliar to Kimberly, she believed, from appellant's body language, tone of voice, and facial expressions, that she was the subject of appellant's verbal tirade; consequently, she felt "under attack pretty much."

{¶ 6} According to Kimberly, Officer Clark interceded and repeatedly asked appellant to calm down and wait in her car; appellant refused to comply with his requests and "verbally attacked" him. Thereafter, Officer Clark informed appellant that he was going to arrest her for disorderly conduct. Appellant then "pulled back from" and "struggled with" Officer Clark. In doing so, appellant fell to the ground.

{¶ 7} Officer Brandt testified on behalf of appellee as follows. When Officer Brandt arrived at the accident scene, appellant was "verbally attacking" Demetrius; i.e., she was "yelling, screaming profanities, insulting, [and] being very rude" to him. Demetrius's demeanor was "laid back" and "nonconfrontational"; indeed, it appeared to Officer Brandt that Demetrius was attempting to ignore appellant and get away from her because he felt threatened by her. Appellant exhibited the same behavior toward Officers Brandt, Love, and Clark; in addition, appellant did not heed the officers' verbal commands to stay out of the roadway and cease communicating with other persons at the accident scene.

{¶ 8} Officer Brandt eventually returned to her cruiser to process paperwork. At some point, she looked up and observed Officer Clark attempting to handcuff appellant; they were "going in circles," which, according to Officer Brandt, typifies a person attempting to avoid being handcuffed. As a result of this struggle, Officer Clark performed an "arm-bar takedown," a technique utilized by police to gain control of a person in order to effectuate an arrest.

{¶ 9} Officer Love testified on appellee's behalf as follows. Upon arriving at the scene, Officer Love observed appellant shouting and motioning at Officer Clark; he could not, however, hear what appellant was shouting. Sometime later, as he was processing paperwork in his cruiser, he looked up and observed Officer Clark "reach for" appellant. When appellant pulled away, Officer Clark attempted to grab her, and the two went around in circles. Officer Clark eventually wrestled appellant to the ground and handcuffed her.

{¶ 10} Officer Clark also testified on behalf of appellee as follows. When he arrived at the scene, appellant was "belligerent" toward Demetrius—i.e., shouting and cursing at him; however, he could not discern exactly what appellant was shouting. Demetrius reported to Officer Clark that appellant and her father had threatened him; he also indicated he wanted to file an official report to that effect. According to Officer Clark, Demetrius seemed "concerned for his safety."

{¶ 11} Appellant continually ignored the officers' repeated admonitions to calm down and stay out of the roadway. At some point, Officer Clark observed Kimberly talking to appellant's father. Appellant began screaming at Officer Clark to make Kimberly leave. Officer Clark told appellant to return to her car or he would place her under arrest. At her father's urging, appellant began walking toward her car; en route, however, she turned around, uttered an expletive, and began walking toward Officer Clark. Officer Clark then informed her that she was under arrest. When he placed his hand on her left arm, she jerked away, spun around, and told him to take his hands off of her. At that point, appellant began to "stiffen up" and pull away. Id. Officer Clark eventually resorted to the "arm-bar takedown" to subdue appellant.

{¶ 12} Following the presentation of its case-in-chief, appellee rested its case. Appellant moved pursuant to Crim.R. 29(A) for an acquittal on grounds that appellee failed to prove the elements of disorderly conduct, and in so doing, necessarily failed to prove the "lawful arrest" element of resisting arrest. The trial court denied the motion.

{¶ 13} Thereafter, appellant presented her case-in-chief. Abiodun Ilerhunwa, appellant's mother, testified on appellant's behalf as follows. Following the accident, Abiodun arrived at the scene separately from her husband and appellant. Kimberly arrived shortly thereafter. Appellant did not interact with either Demetrius or Kimberly. Thereafter, the police arrived and commenced their investigation. When Officer Clark arrested appellant, he came up behind her, grabbed her, and told her she was under arrest. After appellant asked why she was being arrested, Officer Clark knocked her to the ground, handcuffed her, and placed her in his cruiser.

{¶ 14} Richard Obasohan, appellant's father, also testified on behalf of appellant. After he arrived at the scene, he was "very upset" with Demetrius about the accident. When Kimberly arrived, she and Richard began shouting at one another. Appellant shouted at Richard in their native language to leave Kimberly alone; she did not speak directly to Kimberly or Demetrius.

{¶ 15} Subsequently, Officer Clark approached appellant, who was standing behind Richard; he inquired as to appellant's age, told her she was under arrest, kicked her to the ground, handcuffed her, and placed her in his cruiser. According to Richard, Officer Clark had "no reason" to arrest appellant.

{¶ 16} Appellant testified on her own behalf as follows. At the accident scene, appellant had no interaction with Demetrius or Kimberly until after her father became upset and engaged them in a shouting match. At that point, appellant raised her voice to be heard over the din; she admonished her father in their native language to calm down and leave Kimberly and Demetrius alone. After this discourse, Officer Clark "made comments" to appellant and told her to go to

her car. Appellant uttered an expletive as she walked toward the car. She then felt someone grab her shoulder from behind; she thought it was her parents, who were walking behind her. Immediately thereafter, Officer Clark knocked her to the ground. When she asked what was going on, Officer Clark informed her she was under arrest. Appellant responded that if Officer Clark had told her she was under arrest before grabbing her shoulder, she would have "gladly give[n] [him her] hand." She further stated she had no idea why Officer Clark arrested her.

{¶ 17} Based upon the foregoing evidence, the jury found appellant not guilty of disorderly conduct but guilty of resisting arrest, and the trial court sentenced appellant accordingly. On July 26, 2006, the trial court entered judgment consistent with the jury verdicts.

{¶ 18} Thereafter, appellant filed a motion for judgment of acquittal, pursuant to Crim.R. 29(C), and a motion for new trial, pursuant to Crim.R. 33. Following a hearing, the trial court denied both motions by entry filed March 29, 2007. On April 10, 2007, appellant filed this timely appeal from the July 26, 2006 judgment. See App.R. 4(B)(3).[1]

{¶ 19} Appellant raises four assignments of error, as follows:

I. The evidence was insufficient to find Appellant guilty and thus Appellant is entitled to a Judgment of Acquittal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure.

II. Appellant's conviction was against the manifest weight of the evidence.

III. The Trial Court abused its discretion in violation of the Rules of Evidence regarding the admission of testimony at trial and the cumulative effect of such errors was prejudicial to Appellant and deprived Appellant of her Constitutional right to a fair trial.

IV. The cumulative effect of trial counsel's errors at trial denied Appellant her Constitutional right to affective [sic] assistance of counsel.

{¶ 20} As appellant's third assignment is dispositive, we will address it first. Appellant contends that the trial court abused its discretion in excluding testimony from defense witnesses on the issue of Officer Clark's possible bias against appellant stemming from his mistaken perception of her nationality.

{¶ 21} During her direct testimony, Abiodun averred that when Officer Clark arrived at the accident scene, he made a comment about "[t]he damn Somalians again."[2] Appellee objected to the statement on hearsay grounds, and following a

---

1. App.R. 4(B)(3) provides: "In a criminal case, if a party timely files a motion for * * * a new trial for a reason other than newly discovered evidence, the time for filing a notice of appeal begins to run when the order denying the motion is entered."

2. Appellant and her family are not Somalian; they are Nigerian.

bench conference, the court sustained the objection and indicated that it would caution the jury to disregard it. The record reflects that the court did not so admonish the jury during Abiodun's testimony.

{¶ 22} Later, during his direct testimony, Richard averred that Officer Clark had made a comment about Somalians. Appellee again objected to this testimony on hearsay grounds. Following a sidebar at which the prosecution noted that the trial court had failed to admonish the jury regarding Abiodun's comparable testimony, the trial court sustained the objection and cautioned the jury to disregard Richard's statement. Appellee concedes that the trial court erred in excluding the testimony about Officer's Clark's alleged bias toward appellant, but argues that that error was harmless.

{¶ 23} Error in the admission or exclusion of evidence in a criminal trial must be considered prejudicial unless the court can declare, beyond a reasonable doubt, that the error was harmless, and unless there is no reasonable possibility that the evidence, or the exclusion of evidence, may have contributed to the accused's conviction. *State v. Bayless* (1976), 48 Ohio St.2d 73, 106, 2 O.O.3d 249, 357 N.E.2d 1035, vacated in part on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3135, 57 L.Ed.2d 1155. "Whether [the] error was harmless beyond a reasonable doubt is not simply an inquiry into the sufficiency of the remaining evidence. Instead, the question is whether there is a reasonable possibility that [exclusion of] the evidence * * * might have contributed to the conviction." *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, at ¶ 78. "'When a claim of harmless error is raised, the appellate court must read the record and decide the probable impact of the error on the minds of the average juror.'" *State v. Auld*, Delaware App. No. 2006–CAC–120091, 2007-Ohio-3508, 2007 WL 1977748, at ¶ 28, quoting *State v. Young* (1983), 5 Ohio St.3d 221, 226, 5 OBR 484, 450 N.E.2d 1143. "An appellate court must reverse if the government does not meet its burden." *Auld*, citing *State v. Perry*, 101 Ohio St.3d 118, 121, 2004-Ohio-297, 802 N.E.2d 643.

{¶ 24} In determining harmless error, a reviewing court must examine an array of factors, including the importance of the witness's testimony in the prosecution's case, the cumulative nature of the testimony, the presence or absence of corroborating or contradictory evidence, the scope of cross-examination otherwise permitted, and the overall strength of the prosecution's case. *State v. Lukens* (1990), 66 Ohio App.3d 794, 805–806, 586 N.E.2d 1099, citing *Delaware v. VanArsdall* (1986), 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674.

{¶ 25} Here, the jury found appellant guilty of resisting arrest, in violation of C.C. 2321.33(A), which provides that "[n]o person, recklessly or by force, shall resist or interfere with the lawful arrest of himself or another."

Arrest involves four elements: "(1) [a]n intent to arrest, (2) under a real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person * * * (4) which is so understood by the person arrested." *State v. Darrah* (1980), 64 Ohio St.2d 22, 26, 18 O.O.3d 193, 412 N.E.2d 1328, citing *State v. Terry* (1966), 5 Ohio App.2d 122, 128, 34 O.O.2d 237, 214 N.E.2d 114. Thus, in order to prove that appellant resisted arrest, appellee was required, inter alia, to demonstrate beyond a reasonable doubt that appellant understood that she was under arrest before she resisted that arrest.

{¶ 26} The evidence on this point was conflicting; thus, credibility was crucial. As noted, Officer Clark testified that appellant was walking toward him when he informed her she was under arrest, and she thereafter resisted his efforts to effectuate that arrest. In contrast, appellant testified that someone seized her from behind; she pulled away only because she assumed it was her parents, who were walking behind her. According to appellant, Officer Clark did not inform her that she was under arrest until after he knocked her to the ground. Indeed, she told him that if he had informed her that she was under arrest before grabbing her shoulder, she would have "gladly give[n] [him her] hand."

{¶ 27} "Because the possible bias of a witness is always significant in assessing credibility, the trier of fact must be sufficiently informed of the underlying relationships, circumstances, and influences operating on the witness 'so that, in the light of his experience, he can determine whether a mutation in testimony could reasonably be expected as a probable human reaction.'" *State v. Williams* (1988), 61 Ohio App.3d 594, 597, 573 N.E.2d 704, quoting 3 Weinstein, Evidence (1988) 607–627, Section 607[03].

{¶ 28} Appellee contends that exclusion of the testimony as to Officer Clark's possible bias against appellant was harmless because three other witnesses— Demetrius, Kimberly, and appellant's own father—corroborated Officer Clark's testimony that he informed her she was under arrest before she resisted that arrest. As noted, the standard for assessing harmless error beyond a reasonable doubt does not simply involve an inquiry into the sufficiency of the remaining evidence. Rather, the question to be resolved is whether there is a reasonable possibility that exclusion of the evidence might have contributed to the conviction. *Conway,* supra. Upon review of the record, we conclude that the error in this case was not harmless beyond a reasonable doubt.

{¶ 29} Here, Officer Clark's testimony was significant to the jury's determination of appellant's guilt, despite the fact that his testimony was supported by that of other witnesses. The jury may well have attached considerable weight to Officer Clark's testimony, given his status as the arresting officer. Moreover, Officer Clark was afforded the opportunity to refute the allegations of bias. On cross-examination, defense counsel asked Officer Clark if he at any point during

the incident stated that he was "tired of these Somalians." Officer Clark denied making such a statement and specifically testified that he did not make any derogatory comments or use profanity while interacting with appellant. The trial court's subsequent ruling denying appellant's witnesses the opportunity to testify to the contrary left appellant without the means to impeach Officer Clark's denial. Testimony from appellant's witnesses concerning Officer Clark's statement might reasonably have damaged his credibility with the jury, especially given the derogatory nature of his alleged comments. Whether or not Officer Clark was actually biased is a matter for the jury after hearing all of the circumstances surrounding the pertinent events.

{¶ 30} We further note that neither Officer Brandt nor Officer Love corroborated Officer Clark's testimony as to the arrest of appellant. Indeed, Officer Brandt testified that she did not observe or hear anything leading up to Officer's Clark's attempt to handcuff appellant and did not know where Officer Clark was standing when he attempted to place appellant under arrest. Similarly, Officer Love testified that he did not hear any of the interaction between appellant and Officer Clark, as he was seated in his police cruiser 20 to 30 feet away with the windows rolled up; he merely observed Officer Clark "reach for" appellant.

{¶ 31} Moreover, exclusion of the testimony regarding Officer Clark's potential bias against appellant also impacted the credibility of other prosecution witnesses. Demetrius, Kimberly, and Officer Brandt all testified on direct examination that Officer Clark did not make any inappropriate comments or use profanity in communicating with appellant. Again, the trial court's ruling excluding appellant's witnesses from testifying to the contrary left appellant without a means of impeaching the testimony of these three prosecution witnesses. Had the challenged testimony been permitted, the jury would have been required to weigh the credibility of the prosecution witnesses against the credibility of the defense witnesses on the bias issue. As a result of the trial court's error, the jury was not provided the opportunity to do so and thus rendered a verdict based upon an incomplete record on the bias issue.

{¶ 32} In short, we conclude that there is a reasonable possibility that exclusion of testimony as to Officer Clark's possible bias against appellant might have contributed to appellant's conviction; therefore, the trial court's error in excluding such evidence was not harmless beyond a reasonable doubt. *Conway*, supra. The third assignment of error is well taken.

{¶ 33} Appellant's first, second, and fourth assignments of error contend, respectively, that her conviction was not supported by sufficient evidence, that her conviction was against the manifest weight of the evidence, and that she did not receive the effective assistance of counsel at trial. Because appellant's conviction and sentence are vacated pursuant to appellant's third assignment of

error, the remaining assignments of error are rendered moot.    App.R. 12(A)(1)(c).

{¶ 34} For the foregoing reasons, appellant's third assignment of error is sustained, rendering appellant's first, second, and fourth assignments of error moot.   The judgment of the Franklin County Municipal Court is reversed, and the matter is remanded to that court for further proceedings in accordance with law and consistent with this opinion.

Judgment reversed
and cause remanded.

FRENCH, J., concurs.

MCGRATH, P.J., dissents.

WHITESIDE, J., retired, of the Tenth Appellate District, sitting by assignment.

MCGRATH, Presiding Judge, dissenting.

{¶ 35} Because I do not agree with the majority's disposition of appellant's third assignment of error, I respectfully dissent.

{¶ 36} As the majority opinion states, error in the admission or exclusion of evidence in a criminal trial must be considered prejudicial unless the court can declare, beyond a reasonable doubt, that the error was harmless and unless there is no reasonable probability that the evidence, or the exclusion of evidence, may have contributed to the accused's conviction.   Majority opinion at ¶ 23, citing *State v. Bayless* (1976), 48 Ohio St.2d 73, 2 O.O.3d 249, 357 N.E.2d 1035.   In those circumstances, it is the duty of the appellate court to read the record and decide the probable impact of the error on the minds of the average juror.   Id.

{¶ 37} Upon review of the record, I find that, beyond a reasonable doubt, the error was harmless and that there is no reasonable probability that the exclusion of evidence may have contributed to the appellant's conviction.

{¶ 38} Officer Clark testified that while he repeatedly admonished appellant to calm down, appellant refused and used profanity at him.   Officer Clark described that he told appellant's father that he was going to place appellant under arrest if she did not go to her car as instructed.   Despite being "coaxed" by her father to go to the car, appellant said "Fuck that" and began walking back towards Officer Clark.   According to Officer Clark, at this time, he told appellant she was under arrest, and as he put his hands on her left arm, she started to jerk away and told him to get his hands off of her as she began to stiffen up and pull away. Therefore, Officer Clark performed the "arm-bar" technique to restrain appellant.

{¶ 39} Officer Brandt and Officer Love corroborated Officer Clark's testimony to the extent that they both saw appellant evading Officer Clark prior to his using the "arm-bar" technique to restrain appellant. Officer Brandt described that at the time of the incident with appellant, she was in her cruiser when she looked up and saw a struggle between Officer Clark and appellant. It looked to Officer Brandt as if "[Officer Clark] was attempting to gain control of her to handcuff her." Officer Brandt explained, "meaning there was struggling, meaning he tried to grab her arm and she was trying to get away from him, so they went in circles, then he did eventually place her on the ground and get her handcuffed." Officer Love was doing the accident report when he looked up to see Officer Clark reach for appellant and appellant pull away. Officer Love testified, "Then I saw Officer Clark grab ahold of her again. Then they started going around in circles. I saw Officer Clark take her to the ground."

{¶ 40} According to Kimberly Richardson, Officer Clark gave appellant repeated verbal warnings to calm down and move away from the accident scene. Finally, Officer Clark stated that he was going to arrest appellant for disorderly conduct, when appellant pulled back from Officer Clark and was "kind of struggling with him" prior to falling on the ground. Demetrius Richardson testified that he remembers Officer Clark saying, " 'Young lady, I'm placing you under arrest for disorderly conduct.' "

{¶ 41} Abiodum Ilerhunwa, appellant's mother, testified that Officer Clark told appellant she was under arrest. Abiodum testified on cross-examination as follows:

[The State]: Okay. And you testified that Officer Clark grabbed your daughter from behind and knocked her to the ground?

[Witness]: Yes.

[The State]: Before Officer Clark did that, he told her she was under arrest, correct?

[Witness]: Yes.

{¶ 42} Richard Obasohan, appellant's father, testified on direct examination that Officer Clark had asked appellant how old she was, and after she responded, Officer Clark said that she was under arrest. Richard testified on cross-examination that Officer Clark said, "How old are you?" and then he said, "You're under arrest."

{¶ 43} Given that the remaining evidence corroborating Officer Clark's version of events as to whether or not he told appellant she was under arrest, which includes the testimony of appellant's own mother and father, overwhelmingly supports his version of the matter as opposed to appellant's, it makes the

question of whether or not the officer is or is not biased against Somalians irrelevant.

{¶ 44} The statement introduces a matter that is collateral and volatile to the extent that where demonstrably irrelevant to the issue, it creates a danger that the question at hand is not decided upon the facts, but upon whether someone harbors a bias. In this case, the corroborating evidence overwhelms the collateral claim of bias. The majority says that the other officers did not corroborate Officer Clark's version of events, but it should be pointed out that these officers did not discredit his testimony, as they simply did not hear the conversations. The officers did corroborate that appellant appeared to be "resisting" being handcuffed as she was going in circles with Officer Clark and that Officer Clark ultimately performed an "arm-bar" technique on appellant in order to restrain her.

{¶ 45} For these reasons, I cannot find, based on this record, that exclusion of the evidence contributed to appellant's guilt and instead truly was error harmless beyond a reasonable doubt.