[Cite as *State v. Hall*, 2012-Ohio-266.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96680**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LAVERT HALL

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-540908

**BEFORE:** Cooney, J., Celebrezze, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:** January 26, 2012

**ATTORNEY FOR APPELLANT**

Russell S. Bensing
1350 Standard Building
1370 Ontario Street
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

By: Oscar E. Albores
Assistant County Prosecutor
8th Floor, Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

COLLEEN CONWAY COONEY, J.:

**{¶ 1}** Defendant-appellant, Lavert Hall ("Hall"), appeals his convictions of felonious assault and improperly discharging a firearm at a habitation. We find some merit to the appeal but affirm.

**{¶ 2}** Hall was indicted on four counts of felonious assault and four counts of improperly discharging a firearm at a habitation. All charges included one-, three-, and five-year firearm specifications. The case proceeded to jury trial where the following evidence was presented.

{¶ 3} Hall was dating Michelle Flowers ("Michelle") in the summer of 2010. On the evening of July 24, 2010, the two had an argument. Witnesses testified that Hall pushed and beat Michelle.

{¶ 4} The following evening, Michelle's brother, David Flowers ("David"), was sitting on the porch of the family home on East 90th Street, when he observed two vehicles approach the house with guns pointed at him through the vehicle windows. He heard four gunshots as he ran into the house. David testified that Hall was one of the gunmen. David immediately called 911, and Anthony, his father, reported that Hall was one of the shooters.

{¶ 5} Det. Darryl Johnson ("Johnson") testified that he found five spent casings in the street and one 9-millimeter casing on the front porch. However, Johnson testified that there was no physical evidence linking Hall to the crime.

{¶ 6} Michelle testified that about one-half hour after the shooting, Hall called her and confessed to shooting the house on East 90th Street where her family lived. The State provided phone records to corroborate her statement that he called her, but there was no recording of the actual conversation to verify what was said. Michelle's father, Anthony Flowers, testified that he was upstairs when the shots were fired and he heard Hall's laughter after the shots were fired.

{¶ 7} The defense called the lead detective, Artara Adams ("Adams"). Hall's lawyer used the police report to examine Adams over the State's objection. The State used the same police report to cross-examine Adams, who admitted that Hall was the only

named suspect in the report. The State offered the police report as an exhibit over defense counsel's objection. The court later allowed the police report to go to the jury for its deliberation.

{¶ 8} The court granted Hall's motion to dismiss two of the eight counts pursuant to Crim.R. 29. At the conclusion of the trial, the jury found Hall guilty on all remaining counts, including the one-, three-, and five-year specifications. The court sentenced him to four years on each of the underlying counts, with the felonious assault counts merging with the improper discharge counts. The court also merged the one-year firearm specification with the three-year firearm specification and ran them consecutive to the underlying offenses and consecutive to the five-year specification for a total sentence of 12 years on each count.

{¶ 9} Hall now appeals, raising two assignments of error.

{¶ 10} In the first assignment of error, Hall argues the trial court violated his due process rights and abused its discretion when it admitted the police report into evidence in violation of Evid.R. 803(8). In the second assignment of error, Hall argues the court violated his Sixth Amendment right of confrontation by admitting the police report, which contained testimonial statements. Because these assigned error are closely related, we will discuss them together.

{¶ 11} A trial court has broad discretion in the admission and exclusion of evidence, and an appellate court must not interfere with that determination "[u]nless the trial court has clearly abused its discretion." *State v. Apanovitch*, 33 Ohio St.3d 19, 25,

514 N.E.2d 394 (1987). An abuse of discretion "'implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 19, quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 12} Police reports are generally inadmissible hearsay and should not be submitted to the jury. *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229; *State v. Ward*, 15 Ohio St.3d 355, 358, 474 N.E.2d 300 (1984). Evid.R. 803(8), which governs hearsay exceptions, provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, ***excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness***. (Emphasis added.)

{¶ 13} The admission of the police report allowed the State to introduce hearsay from witnesses who never appeared at trial. The police report not only allowed the State to improperly corroborate Michelle's testimony (where there was no express or implied charge against her of recent fabrication or improper influence or motive),[1] but also allowed the State to present hearsay statements that were never subject to

---

[1] Evid.R. 801(D)(1)(b) permits the admission of a prior consistent statement of a witness if it is "offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive."

cross-examination and were potentially more damaging than testimony from live witnesses.

{¶ 14} For example, on the second page of the report, under the heading "Details of Offense," the report stated, "ON 7.24.2010, THE ABOVE MALE TOLD M. FLOWERS THAT HE WAS GOING TO KILL HER." Michelle never testified that Hall threatened her before the shooting incident.

{¶ 15} Further, in the "Original Narrative," the report stated:

Speaking with the reporting person #1 [David Flowers], stated his sister and suspect recently had a physical fight, suspect called stated, "I'm going to shoot up your house," and hung up the phone.

FURTHER INVEST REVEALS

Suspect called 2130 hours, advising — after the police leave he's returning to do more shooting.

{¶ 16} There was no testimony that Hall ever called David Flowers to communicate his intention to shoot the house either before or after the incident. This evidence was presented to the jury for the first time during deliberations. As such, Hall did not have an opportunity to cross-examine the witnesses who made those statements.

{¶ 17} Furthermore, the admission of the police report violated Hall's right to confront witnesses. In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that the Confrontation Clause applies to exclude "testimonial" as opposed to "non-testimonial" evidence. Although the *Crawford* court did not define "testimonial," it discussed three possible definitions of that

term, which include: (1) ex parte in-court testimony or its functional equivalent, such as affidavits and prior testimony that the defendant was unable to cross-examine, or pretrial statements that declarants would reasonably be expected to be used in a prosecution; (2) extrajudicial statements contained in formal testimonial materials such as depositions, prior testimony, or confessions; and (3) statements made under circumstances that would lead an objective witness to believe the statement would be available for use at a later trial. *Id.* at 51-52.

{¶ 18} In *Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), the United States Supreme Court further defined the meaning of the term "testimonial." In that case, the court held that the Confrontation Clause applies only to testimonial hearsay and not to statements made "to enable police assistance to meet an ongoing emergency." *Id.* at 2277. In *Davis*, the victim had made a 911 emergency call and, in the course of that call, incriminated the defendant. In affirming the lower court's admission of the statements, the *Davis* court distinguished statements made during an emergency situation from statements made during the course of an investigation after the crisis situation has passed. Specifically, the *Davis* court held:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later prosecution. *Id.* at 2273-2274.

{¶ 19} In the case of 911 calls, the *Davis* Court reasoned, the declarants are generally "speaking about events *as they [are] actually happening * * *.*" (Emphasis sic.) *Id.* at 2276. 911 callers are typically in the midst of the emergency. *Id.* Under these exigent circumstances, the callers are not testifying as witnesses, and their statements do not qualify as testimonial in nature.

{¶ 20} Further, in *Michigan v. Bryant*, 562 U.S. __, 131 S.Ct. 1143, 1157, 179 L.Ed.2d 93 (Feb. 28, 2011), a testimonial exception was more discretely defined as follows:

> The existence of an ongoing emergency is relevant to determining the primary purpose of the interrogation because an emergency focuses the participants on something other than "prov[ing] past events potentially relevant to later criminal prosecution." * * * *Davis*, 547 U.S., at 822, 126 S.Ct. 2266. Rather, it focuses them on "end[ing] a threatening situation." *Id.* at 832, 126 S.Ct. 2266. Implicit in *Davis* is the idea that because the prospect of fabrication in statements given for the primary purpose of resolving that emergency is presumably significantly diminished, the Confrontation Clause does not require such statements to be subject to the crucible of cross-examination. (Footnote omitted.)

{¶ 21} This court has held that although appellate courts generally review decisions on the admission of evidence for an abuse of discretion, we apply a de novo standard of review to evidentiary questions raised under the Confrontation Clause. *State v. Worley*, 8th Dist. No. 94590, 2011-Ohio-2779, ¶ 11, citing *State v. Babb*, 8th Dist. No. 86294, 2006-Ohio-2209, ¶ 17; *State v. Simuel*, 8th Dist. No. 89022, 2008-Ohio-913, ¶ 35; *State v. Steele*, 8th Dist. No. 91571, 2009-Ohio-4704, ¶ 18.

{¶ 22} Here, two police reports were admitted into evidence over defense counsel's objection. Both reports contain testimonial statements "that would lead an objective witness to believe the statement would be available for use at a later trial." *Crawford* at 51-52. The reports contain statements of investigating officers who were not responding to an emergency and who did not testify at trial. According to one report, Officers Daniel Baillis, Bryan Curry, and Gerald Bronson investigated the crime in addition to Artara Adams. The second report identifies additional officers Mark Bickerstaff, Johnny Harris, and Michelle Wolf as investigating officers. One report identifies Officer Daniel Baillis as the reporting officer, while the second report identifies Officer Johnny Harris as the reporting officer. Yet none of these officers testified at trial except Det. Adams.

{¶ 23} The police reports further indicate that the police were investigating Hall for crimes of menacing and intimidation of a crime victim or witness. Such statements are unfairly prejudicial since he was not on trial for these offenses. The admission of the police reports violated Evid.R. 803(8) and the Confrontation Clause and constituted error.

{¶ 24} However, because the evidence of Hall's guilt is overwhelming, we find this error harmless. Although there was no physical evidence linking Hall to the crime, David Flowers testified that he observed the two vehicles pull up in front of the house, and Hall held a gun pointed at him. In addition, Anthony Flowers testified that he heard Hall's laughter after the shots were fired.

{¶ 25} David Flowers's testimony that he saw Hall holding the gun out the vehicle window, coupled with Anthony's excited utterance to the 911 dispatcher in which he identified Hall as one of the shooters, along with Michelle's testimony regarding Hall's calls to her, require our conclusion that the police reports did not contribute to Hall's convictions beyond a reasonable doubt.

{¶ 26} Hall's two assignments of error are overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
COLLEEN CONWAY COONEY, JUDGE

FRANK D. CELEBREZZE, JR., P.J., CONCURS;
LARRY A. JONES, J., DISSENTS (WITH SEPARATE OPINION ATTACHED).

LARRY A. JONES, J., DISSENTING:

{¶ 27} Respectfully, I dissent.   The majority correctly finds that the admission of police reports in this case violated Evid.R. 803(8) and the Confrontation Clause were unfairly prejudicial to Hall.   Yet the majority overrules the trial court's error, finding it "harmless" because the evidence of Hall's guilt was overwhelming.

{¶ 28} Error in the admission of evidence in a criminal trial must be considered prejudicial unless the court can declare, beyond a reasonable doubt, that the error was harmless, and *unless there is no reasonable possibility that the evidence may have contributed to the accused's conviction.* (Emphasis added.) *Columbus v. Obasohan*, 175 Ohio App.3d 391, 397, 2008-Ohio-797, 887 N.E.2d 385 (10th Dist.), citing *State v. Bayless*, 48 Ohio St.2d 73, 106, 357 N.E.2d 1035 (1976), vacated in part on other grounds, 438 U.S. 911, 98 S.Ct. 3135, 57 L.Ed.2d 1155 (1978). As to constitutional errors, not all errors are prejudicial. We may decline to notice a constitutional error if the error is harmless beyond a reasonable doubt. *State v. Love*, 4th Dist. No. 05CA2838, 2006-Ohio-1824, 2006 WL 933360, ¶ 34, citing *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

> Whether a Sixth Amendment error was harmless beyond a reasonable doubt is not simply an inquiry into the sufficiency of the remaining evidence. Instead, the question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction. *State v. Conway*, 108 Ohio St.3d 214, 228, 2006-Ohio-791, 842 N.E.2d 996, citing *Chapman* at 24.

{¶ 29} "'"When a claim of harmless error is raised, the appellate court must read the record and decide the probable impact of the error on the minds of the average juror."'" *Obasohan* at 397, quoting *State v. Auld*, 4th Dist. No. 2006-CAC-120091, 2007-Ohio-3508, 2007 WL 1977748, quoting *State v. Young*, 5 Ohio St.3d 221, 226, 450 N.E.2d 1143 (1983).

{¶ 30} Thus, we must consider whether the improper admission of the police reports *could have* contributed to Hall's convictions, not just whether there was overwhelming evidence of his guilt. Because the police reports were admitted into evidence, the jury improperly heard for the first time during deliberations that: (1) Hall called the victims immediately after the shooting and threatened to return to do more shooting; (2) Det. Adams contacted the victims after the shooting and informed them that Hall had been arrested and jailed for another crime; (3) Michelle had an active restraining order against Hall; and (4) Hall called the victims a second time after the shooting, spoke with a police officer and claimed he did not shoot up the house and the victims had threatened him.

{¶ 31} Based on these facts, I cannot conclude that the information in the police reports did not contribute to Hall's conviction. Not only did the jury learn that Michelle had a restraining order against Hall, but also that Hall had been arrested and jailed for another crime. Simply put, the admission of the police reports allowed the state to improperly bolster its witnesses' testimony without giving Hall the benefit of cross-examination.

{¶ 32} Although there was eyewitness testimony that Hall was the shooter, there was no physical evidence linking Hall to the crime. Moreover, I am reminded that we must not only consider whether there was other evidence by which Hall could be convicted of the charged crimes, but whether there is a reasonable possibility that the police reports improperly admitted into evidence contributed to his conviction. I would find that the standard has been met and sustain the assignments of error.